HIGGINS, Justice.
 

 The relator instituted this suit on November 27, 1940, alleging that he had been illegally expelled and discharged on October 9, 1940, from his office as Vice-President and a member of the Board of Directors or Executive Committee of the defendant local labor organization. He prayed for judgment covering his salary of $30 per week, as Vice-President, from October 10, 1940, to January 25, 1942, the remainder of his term, or a total of $2,010, and an additional $4 per month as a member of the Board of Directors or Executive Committee for the same period; and that an alternative writ of mandamus issue directed to the defendant to show cause why he should not be reinstated and recognized as Vice-President and as a member of the Board of Directors or Executive Committee of the defendant, entitled as such to the powers, privileges and emoluments of his offices. The case was set for trial on December
 
 6,
 
 1940, but was continued on that date.
 

 On February 10, 1941, the relator filed a supplemental petition alleging that on January 6, 1941, he went to the defendant’s
 
 *282
 
 office to pay his dues and receive his membership card and his tender was refused; that on January 8, 1941, or subsequent to the filing of the present suit, the President of the defendant appointed a Grievance Committee to present charges against the relator; that the Committee made its report and recommendations on January 13, 1941, and, although a motion was made and carried by a substantial majority vote, rejecting the recommendations or charges contained in the Grievance Committee’s report, the President arbitrarily and illegally declared that the motion had failed to carry; that at a subsequent meeting of the membership of the defendant, a resolution was presented to the Secretary and President, to reject the charges against the relator and to reinstate him, but that the President arbitrarily and unlawfully refused to have the resolution presented or read at the meeting; and that, although he had been discharged from his offices and expelled as a member of the defendant organization, without notice and a hearing, by the President and a few of his partisans, they were then seeking and threatening him on the same false charges which had been previously legally rejected and voted down by the membership. He reiterated his former prayer and also prayed for a restraining order and an injunction.
 

 The court issued the order and a rule to show cause why a preliminary writ of injunction should not be granted, and made the alternative writ of mandamus returnable on February 26, 1941. It does not appear that the defendant filed any answer or return to either the original or supplemental petitions. The testimony of a number of witnesses was taken for both parties on several occasions and judgment was rendered on July 23, 1941, in favor of the relator, restoring him to his offices, reinstating'him as a member of the defendant organization, and granting him his back salary.
 

 On July 31, 1941, the International Longshoremen’s Association, Local Union No. 1419, appearing through other counsel, filed a motion for a new trial, claiming that it was an unincorporated association and was separate and distinct from the General Longshore Workers, Inc., the incorporated local labor organization, although the plaintiff had alleged and offered evidence to show that they were one and the same organization; that the judgment was erroneous because the relator’s action was premature, as he had failed to first exhaust all his remedies in the Association, in accordance with its Constitution and ByLaws ; and that the evidence did not warrant a judgment in his favor.
 

 The motion for a new trial was denied and the judgment signed on October 7, 1941. On January 2, 1942, the defendant filed exceptions of no right and no cause of action and that the court was without jurisdiction ratione materiae, all predicated on the ground that the evidence showed that the relator had not availed himself of all of his remedies in the. Association before resorting to court proceedings.
 

 The International Longshoremen’s Association, Local Union No. 1419, appealed and the relator answered the appeal and asked for 10% damages for “frivolous appeal”.
 

 
 *284
 
 The record shows that the relator had been elected as Vice-President and a member of the Board of Directors or Executive Committee of the defendant for the term expiring January 25, 1942, and was receiving a salary of $30 per week in his capacity as Vice-President, and $4 per month as a member of the Board of Directors or Executive Committee; that certain complaints were made with reference to alleged irregularities in the finances of the organization and the Supervisor of the International Longshoremen’s Association, with which the local organization was affiliated, was called in; that he and certain members of the defendant requested the resignation of the several officers of the Local Union and all of them complied with the request except the relator and one other officer, who refused to resign; that, thereupon, without any written notice and without any trial whatsoever, the relator was summarily discharged as an officer of the Local Union on October 9, 1940; and that the relator, individually and through counsel, then wrote letters to the President of the International Longshoremen’s Association and the President of the defendant, Local Union No. 1419, protesting that the action was arbitrary, illegal, unwarranted, and in violation of the Constitution and By-Laws of the Local Union, and proclaiming his innocence of any wrongdoing, but these communications were either ignored or not acted upon, with the result that this suit was filed on November 27, 1940.
 

 Sections 1, 2 and 3 of Article XXVII of the Constitution and By-Laws of the International Longshoremen’s ' Association, Local Union No. 1419, read as follows:
 

 “Section 1. This Association reserves the right to fine, suspend, expel or impeach any officer or member who offends against its dignity and regulations.
 

 “Section 2. No officer or member shall be expelled for any offense without having had an opportunity to defend himself, which opportunity shall be a written notice from the secretary that he must appear at a meeting to answer charge or charges against him and if he fails to appear or render a lawful excuse, he shall be proceeded against as if present and on conviction he may be impeached or expelled as the majority may determine.
 

 “Section 3. A majority of the members present shall decide all questions not otherwise provided for.”
 

 Counsel for Local Union No. 1419 argues that under Section 1, above quoted, the association was authorized to expel the relator without any notice and trial-The attorneys for the relator pointed out that.under the provisions of Section 2, the-relator was entitled to notice and trial before being expelled as a member of the-association, or discharged from office.
 

 Our views are in accord with those of our learned brother below — that under the clear provisions of Sections 2 and 3, above quoted, the relator, as an officer and as a member, was entitled to written notice from the secretary of the charge or charges against him and an opportunity to defend himself in a trial, before he could be legally impeached or expelled by
 
 *286
 
 ■a majority vote of the members of the association.
 

 From the foregoing conclusion, it is ■ obvious that the action of the defendant in refusing to accept the relator’s tender of dues as a member of' the association, and in refusing to issue him a membership card, was illegal, because the relator, as a member of the association, could not be expelled without a notice and trial, and since the testimony unquestionably shows that he did not receive a notice nor was he tried, he had the right to insist that the association accept his dues and issue him a membership card.
 

 After the original petition was filed, some of the officers and members of the association opposed to the relator, apparently realized that their action in expelling him as an officer and as a member of the association was illegal, because the President then appointed a Grievance Committee to investigate the complaints against him and to make a report. This was done and the Committee recommended that the charges be brought against him. However, when the report was placed in the minutes and an attempt was made to have the minutes adopted and approved, certain members, who were of the opinion that the relator was innocent of any wrongdoing, made a motion that the unfavorable report against the relator be rejected. On a “yea-nay” vote, the preponderance of the testimony shows that, at the regular meeting of January 13, 1941, the recommendations of the Grievance Committee or the charges made by it, were rejected by a vote of 114 to 79, but the presiding officer declared that the motion to disapprove had been lost. This resulted in the meeting encjing in confusion. Subsequent to that date, a majority of the members of the Board of Directors or Executive Committee (9 out of 12) signed a written confession of judgment, stating therein that an injustice had been done the relator by expelling him as an officer and as a member of the defendant local labor organization, because he was innocent of any wrongdoing, and they asked the court to render judgment against the defendant in favor of the relator, reinstating him as an officer and as a member of the association and awarding him all of his back salary. Twenty members of the association presented a letter to the regular meeting on July 15, 1941, together with a proposed resolution to the effect that the relator was not guilty of the charges made against him, and that he should be restored to his office and membership in the association. The President and the Secretary placed the resolution in a desk drawer and declined to bring it before the association and this resulted in further turmoil. From this evidence, the trial judge concluded that the relator had been unjustly and illegally dealt with and was entitled to a judgment.
 

 It is our opinion that the majority members having voted down the proposed charges of the Grievance Committee at the meeting of January 13, 1941, there were no legal charges thereafter pending against the relator upon which to try him. It is also difficult to understand how the association could proceed to try an officer and a
 
 *288
 
 member whom it had considered previously expelled.
 

 In the motion for a new trial, another counsel appeared solely in behalf of Local Union No. 1419 and the point was made that that association was unincorporated, whereas, the corporation of which the relator was an officer and a member was an entirely separate and distinct entity. Therefore, it is argued that whatever the officers and members of the corporation did is in no way binding upon the unincorporated association. On the question of whether or not there were one or two local unions, an incorporated one and an unincorporated one, the preponderance of the testimony shows that the incorporated one was the original Union, and later, when it became affiliated with the International Longshoremen’s Association, it became designated as Local Union No. 1419. The members of the incorporated Union and its officers served in their respective capacities for the Local Union No. 1419. The money collected from these members for dues was deposited in the bank in the corporation’s name and the dues and the assessments due the International Association by the Local Union were forwarded to it from those funds. The question of impeachment and expulsion of officers and members of the Local Union is a matter over which the Local Union retained jurisdiction, as shown by the Constitution and By-Laws thereof. This is the same authority that counsel for the Local Union No. 1419 now relies upon to maintain the legality of the expulsion and discharge of the relator from the Union without notice and hearing, as we have already pointed out.
 

 Learned counsel for Local Union No. 1419 relies primarily upon the testimony of Mr. W. R. Mayo, Vice-President of the International Longshoremen’s Association, who stated that the incorporated union and the unincorporated union were separate and distinct, and are two organizations and not the same one, because the International Association would not recognize an incorporated local union and only recognized an unincorporated association and, therefore, Local Union No. 1419 unincorporated was the affiliate of the international organization.
 

 , Article 35 of the Constitution and ByLaws of the International Longshoremen’s Association, Local Union No. 1419, reads as follows:
 

 “This Constitution shall not be altered, amended or repealed unless by a three-fourths vote of all^ the members of the
 
 corporation
 
 in good standing at a regular meeting, or a special meeting held for that purpose; notice of such special meeting to be given to each member of the
 
 corporation
 
 in good standing by mailing same to him at his last known address, as shown on the books of the
 
 corporation
 
 at least ten days before the time for the meeting.”(Italics ours.)
 

 From the foregoing, it is clear that Mr. Mayo is in error in his statement and we may further say that he was uncorroborated therein.
 

 To further show that the Local Union No. 1419 and the General Longshore Workers, Inc., were one and the same local union and were so treated by all of the members and officers, it may be pointed out
 
 *290
 
 that the relator was elected as a Vice-President and member of the Board of Directors or the Executive Committee of the local union and performed services to the organization as such, receiving in his capacity as Vice-President, under Article IV of the Constitution and By-Laws of Local Union No. 1419, “for the faithful performance of his duties * * * the sum of Thirty ($30.00) Dollars per week”, and receiving as a member of the Executive Committee, under Article XIV, Section 2 “the sum of Four ($4.00) Dollars monthly and all lost time when approved by the Association.”
 

 The relator had been elected as the Vice-President and as a member of the Executive Committee or Board of Directors on May 28, 1937, to serve until his successor was elected at a meeting to be held on the first Monday of December, 1941, his term expiring on January 25, 1942. He was paid $30-per week, as provided in the Constitution and By-Laws, and the $4 per month as also therein provided, from May 28, 1937 until October 9, 1940, by Local Union No. 1419, which he was serving. Furthermore, it was the International Association’s Supervisor who requested the relator’s resignation and ordered his summary expulsion and discharge upon his refusal to comply therewith. This shows that that officer of the International Association, 'as well as the officers and members of the Local Union, considered and treated the relator as an officer and as a member of the Local Union No. 1419, which was affiliated with the International Association. It is our opinion that the evidence shows that the unincorporated and incorporated Local Unions were one and the same.
 

 The exceptions of prematurity, of no right and no cause of action, and to the jurisdiction of the court ratione materiae, are founded upon the same statement made in the motion for the new trial—that the relator had failed to exhaust all of his remedies in the Association before filing this legal proceeding. In support of them, counsel cites Elfer v. Marine Engineers Beneficial Ass’n, 179 La. 383, 154 So. 32 and Irwin v. Lorio et al., 169 La. 1090, 126 So. 669, holding that the complainant must first avail himself of the remedies provided for in the Constitution and By-Laws of the Association before resorting to court. We stated in our opinion on the motion to dismiss the appeal that these issues necessarily involved evidence to be heard on the merits and since we have concluded that the relator did exhaust all of his remedies in the Association, which illegally expelled and discharged him, he is entitled to protect his rights in court, which has jurisdiction to consider them. 7 C.J. S., Associations page 81, § 34, subsec. b. The authorities referred to are not in point. The exceptions are without merit and are overruled.
 

 Under the facts and circumstances of this case, we do not consider that we would be justified in imposing 10% penalties for a frivolous appeal.
 

 . For the reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
 

 ROGERS, J., absent.