57 So.2d 224

**JONES et al. v. HANSEN et al.**

No. 40066.

Jan. 14, 1952.

Rehearing Denied Feb. 18, 1952.

Nicole E. Simoneaux, Florence L. McKinney, New Orleans, for plaintiffs-appellants.

Bernard J. Tortomasi and A. Lester Sarpy, New Orleans, for defendants-appellees.

LE BLANC, Justice.

This is a suit by Alexander Jones, Fredrick Yorsch and Fred Bodungen against the defendants, Henry Heinen, Carl H. Hansen, Gabriel H. W. Doose, Willie C. Bonmandt, Robert E. Kift, Gustave Svenson, Ellis Ahlstrom, Walter B. Zechel, Albert U. O'Shaughnessy and H. M. Stegall, members of the National Organization, Masters, Mates and Pilots of America, Local No. 15 at New Orleans, for damages arising out of an alleged libel and loss of wages due to the publishing of false charges against the three plaintiffs and others and the notification of their not being in good standing to steamship companies having contracts with the National Organization.

Plaintiffs allege that defendants, on or about November 22, 1946, and continuing thereafter without interruption until the date of the filing of this suit, conspired together with each other, to defame petitioners and to deprive them of their rights and privileges as members of the National Organization of Masters, Mates and Pilots of America, Local No. 15, by oppressive, malicious and unlawful means; that it was a part of said conspiracy that defendant, Carl H. Hansen, would and he did prefer against each of the plaintiffs, twelve charges to wit:

"1. Getting the National Organization in disrepute by giving statements to the press and radio without proper authority of the duly elected officers.

"2. Spending money contributed to the organization without authority.

"3. For collecting fines and contributions and not furnishing the names of members, or amount of fines or amount of money contributed.

"4. Appointing a one man trial committee; trying and penalizing members up to $200.00 and $300.00; suspending members for 99 years, which is against the By-Laws of Local No. 15.

"5. Authorizing trips to Mobile and New York, without proper authorization of the National Organization or Local No. 15.

"6. Fighting in the Hall and causing other disturbances.

"7. Appointing committees and promising to pay its members $1.50 per hour for an indefinite period of time.

"8. Hiring men and committees to be paid out of the general fund of Local No. 15. Spending money out of the General Fund which is against the National Constitution, i. e., sending member Mr. L. Smith to Washington D. C., through to New York, $150.00 the first time and $150.00 the second time.

"9. Trying to start a dual organization and informing the ship owners to ship men from the New Union Hall, the rear room of a saloon.

"10. Trying to disrupt Local No. 15, by creating dissention among the membership and aiding and abetting the Communist Party to disrupt the National Organization and Local No. 15, for distributing literature

against the National Officers and some of the Officers of Local No. 15.

"11. Mis-use of telegraph and telephone service to the extent, that bills are coming in that will amount to hundreds of dollars; which have not been authorized by Local No. 15.

"12. Conduct un-becoming a member and acting detrimental to the best interests of the Organization by disregarding a lawful order of the National President and taking the National Organization to court."

Plaintiffs further allege that all said charges were and are false, malicious, and libelous as to each petitioner except insofar as Charge No. 12 may be intended to allege that Petitioner Fred Bodungen was a party plaintiff in Suit No. 272–356 of the Civil District Court for the Parish of Orleans entitled Leonard B. Hansen, et al. v. Henry Heinen and Carl H. Hansen.

They next allege that it was part of said conspiracy that these defendants would be and they were, selected as a trial committee to conduct the trial of petitioners on the aforesaid charges; that the trial was invalid in that defendants failed to give plaintiffs reasonable notice thereof, by failing and refusing to inform petitioners which members preferred charges against them, other than defendant Carl H. Hansen, and whether or not said charges were signed by the member or members preferring them as required by said constitution and by-laws, and in that defendant H. M. Ste-

gall was not then a member of said Local No. 15.

Plaintiffs further allege that the pretended trials of plaintiffs were conducted without hearing testimony or any defense witnesses or any prosecuting witnesses other than defendants Carl H. Hansen, Henry Heinen and aforesaid members of the trial committee who acted as prosecutors, witnesses and judge and jury.

They further allege that as a result of the said trial, Jones and Bodungen were found guilty of all twelve charges and Fredrick E. Yorsch was found guilty on charges Nos. 9, 10 and 12 and not guilty on the remaining charges; that Alexander Jones was expelled from the organization effective December 7, 1946; that Fredrick E. Yorsch was suspended from the organization for three consecutive years, effective December 4, 1946; and that Fred Bodungen was suspended indefinitely from the organization effective December 3, 1946.

They also allege that the plaintiffs were not given a new trial as ordered by the National Executive Committee, but defendants merely held a pretended review trial.

They further allege that defendant Carl H. Hansen in his official capacity as Secretary of Local 15 and as National Vice-President of the National Organization of Masters, Mates and Pilots of America, informed the membership of Local 15, the officers of the National Organization and all ship operators having contracts with the

National Organization that petitioners were not in good standing after the original pretended trials in December 1946 and after the reviews of said trials in April 1947.

They finally allege that because they published the libelous and malicious charges and conducted the irregular trials that plaintiffs were damaged and have been unable to obtain employment as mariners under their several licenses and have been deprived of their customary means of livelihood.

The demand of each plaintiff is exactly the same consisting of damages to good name, fame and reputation, for humiliation, mental anguish and physical discomfort in the sum of $20,000; loss of wages for 245 days at $20 per day, $4,900, and punitive and exemplary damages, $5,000. Judgment is accordingly prayed for in favor of each in the total sum of $29,900.

The defendants all joined in a common answer in which they denied, generally, all the allegations of the plaintiffs and set up as a special defense that all the acts complained of by them were official acts of the National Organization of Master, Mates and Pilots of America, Local 15, and not acts performed by them in their individual capacities and consequently there can be no personal liability as far as they are concerned. They further urge in defense that the suit is premature since plaintiffs have not exhausted all the remedies available to them within the union itself, specifically setting out that according to the rules and by-laws governing the local they might have had themselves reinstated by (1) Application to Local 15; (2) Application to the National Executive Committee; (3) Application to the National Convention.

After trial in the district court there was judgment in favor of defendants dismissing plaintiffs' suit from which judgment they have appealed. The trial judge assigned no written reasons for judgment.

The charges preferred against these plaintiffs originated during a nation-wide strike of the National Organization of Masters, Mates and Pilots of America which was carried on in New Orleans from about October 1 through October 28, 1946. At that time defendant Henry Heinen was President and defendant Carl H. Hansen was Secretary-Treasurer of Local No. 15. The latter was also a Vice-President of the National Organization. A strike committee, charged with the duty of conducting the strike was duly appointed. The three plaintiffs in this case, while not members of that committee were assigned to certain duties which they had to perform but all appear also to have been otherwise very active in the administration of the strike efforts.

During the strike, Carl Hansen left New Orleans to attend a National Convention of the Organization in San Francisco and upon his return to New Orleans found conditions existing in the local unit which he says made it necessary for him to report to the National president and the latter, acting under authority of the Constitution and Rules of Order of the Organization,

suspended all officers of the local and appointed Hansen as agent in charge. Apparently quite a bit of feeling was engendered and appears to have resulted in a movement, if not led by the three plaintiffs, at least participated in by them, to oust the local officers, Heinen and Hansen, and probably also to form a new local unit to be affiliated with a different national organization.

Appellants complained of the manner in which the charges were preferred against them contending as we understand, that they were not properly signed by the complainants. Following the listing of the twelve charges which are typewritten on a letter-head of the National Organization there appears the statement: "These charges have been brought against you by members of Local 15, and C. A. Hansen, National Vice-President." We take the complaint to be that since the charges were brought by members of the local unit that the members who brought them should have all signed the document which is signed only by "C. H. Hansen". But under the very provisions of the Constitution of the local which is called to our attention, all that is necessary is that the charges presented be in writing and "signed by the complainant who must be a full member of Local No. 15 in good standing." It is not contended that C. H. Hansen was not a member in good standing of Local No. 15 and therefore the provision of the Constitution was complied with.

The plaintiffs, along with several others, were sent notices of their trial by registered mail. In addition the charges were posted on the bulletin board in the headquarters of the local organization. In some cases the date of the trial was fixed as near as two days from the date of notice and it would appear that this was a short notice for a person to defend himself on twelve charges such as were presented against these plaintiffs. As we understand the situation, this trial was conducted under the constitution and the rules of the National Organization since at the time it took place the local unit was under suspension. Assuming that to be so we note that under the Constitution of the National Organization it is provided that "reasonable notice" of the charges shall be given to an accused. We find, however, that no protest or objection was made by any of the plaintiffs who appeared for trial with regard to the time that was given them in order to prepare their defense. Yorsch appeared for trial and was found guilty of charges 9, 10 and 12. Bodungen appeared some twenty to thirty minutes late and was tried in absentia, according to the by-laws of the association, and was found guilty on all charges. When he did appear, he was informed that his trial was over and he would receive the results by mail. Jones instructed his wife not to receive any mail because he suspected (as we believe all of the others who were charged did) that he would get notice of his trial and the letter was returned with the notation that it was

refused. He stated that he was working on a ship which was tied up at the Todd-Johnson dock in Algiers and that he did not receive the notice to appear for trial until Monday, December 9th. That was when he returned to the local headquarters and found the notice by registered mail which had been returned. He was also tried in absentia on December 7, 1946 and found guilty on all charges.

Ordinarily we would say that these accused did not receive notice within a reasonable time with which to prepare and defend themselves on the charges preferred against them and we get the impression from the letter addressed to them by the Secretary of the National Organization in answer to their appeal made to the National Executive Committee that this may have been one of the reasons why they were given a rehearing of their case and inasmuch as the trial committee of the local unit, acting on the instructions of the National Executive Committee, did give these plaintiffs either a rehearing or had a review of their case after proper notice with sufficient time given to appear and defend themselves, it would seem that the irregularity in the time of notice of first trial was thereby corrected and they had no further reason to complain on this point.

The instructions contained in the letter of the National Secretary ordering further proceedings to be had became the subject of dispute with regard to whether the accused were to be tried again or merely a review of their case was to be had. We quote this part of the letter which created doubt in the minds of the trial committee as to what action was to be pursued:

"After discussion, it was regularly moved and seconded that these appeals be referred back to Local #15 and each member be again informed to appear before a committee *to review the case* and *be tried again*. Further, that Local #15 be notified to give these men a *rehearing* in their case giving them sufficient time in which to appear before a trial committee. This motion was carried by unanimous vote of the Executive Committee." (Emphasis supplied.)

The local officials, not being sure of the intention of the National Executive Committee wrote the National Organization asking for a clarification of these instructions and in reply were informed to try the case according to their by-laws.

On February 20, 1947, at a regular meeting of Local No. 15, it was moved, seconded and carried unanimously that the same trial committee that tried certain members of Local No. 15 during the period from December 2, 1946 to December 9, 1946 be elected to review each and every one of these cases as per edict of the National Executive Committee.

It was the opinion of the local officials and the membership that the instructions from the National did not mean a new trial but a review of the trial and plaintiffs were thus informed. However, it does not

appear that plaintiffs were denied the opportunity to present witnesses or deprived of counsel although at the review trial, one of the members of the trial committee did state that since this was a review of the trial, no witnesses were needed. The result of the review trial was submitted to the membership at a general meeting and the members voted 10 to 4 to uphold the decision of the trial committee. On appeal from this decision to the National Executive Committee, that body also approved the decision of the trial committee. It is reasonable to assume therefore that the National Executive Committee must have interpreted the instructions in the same manner that the local officials did.

█ While it may be that the evidence produced, or the manner in which the trials were conducted, would not have been sufficient in a court of law, yet there was evidence to support the finding of the trial committee and under our jurisprudence courts will not interfere with the internal affairs of an unincorporated association so as to settle disputes between the members, or questions of policy, discipline or internal government where the by-laws or constitution of the organization is followed, where there is no fraud, oppression or bad faith; or no property or civil rights are involved. See Elfer v. Marine Engineers Beneficial Association No. 12, 179 La. 383, 154 So. 32.

█ After a careful reading of the voluminous record in this case, we fail to find any evidence of a conspiracy or any evidence of malice toward plaintiffs. Certainly no concerted action on the part of the trial committee has been shown. A list of twenty-nine names of members of the local organization was submitted to the President of the National Organization and from that list eight were appointed by him as members of the trial committee. They were notified of their appointment by letter and none of those thus appointed knew who the others would be. They all testified that they acted independently in reaching a conclusion and this is reflected in the different verdicts arrived at in some of the cases. The charges made by plaintiffs that H. M. Stegall, one of the members of the trial committee was not a member of Local No. 15 and therefore not eligible, was not supported; on the contrary, the proof shows that he was, having been previously transferred from the local at Mobile, Alabama, to which he formerly belonged.

It is argued that if no actual malice has been shown the same may be implied from the acts of the parties, but again we find no testimony in the record on which to base even any inference of malice. Plaintiffs, themselves, as well as all of the members of the trial committee who testified all disclaimed any ill feeling on the part of any.

█ connection with the notification to the steamship companies regarding the standing of the plaintiffs in the local organization we find the evidence to be that there was a notice sent out that plaintiffs were not

in good standing but as soon as the National Executive Committee had acted in referring the matter back to the local organization another notice was sent informing them that these men might be employed. The sending of these notices by Hansen, in his capacity as Secretary of the local organization, was done in accordance with the by-laws and was the mere performance of an administrative duty on his part. No malice can be implied from such an act.

█ No invasion of plaintiffs' property or civil rights were involved because they merely enjoyed the privilege of membership, with only a right to the joint use and enjoyment of the association's property and funds so long as they remained members. Their rights ceased on their suspension in the same way they would have if they had terminated their membership by their own voluntary acts. See Elfer v. Marine Engineers Beneficial Ass'n No. 12, supra.

█ Regardless of what merit there may be in either of the special defenses urged, in view of the complete record that was before us as a result of the trial of the case on the merits, we deemed it proper to review the case in the light of that record and considering the conclusions we have reached find it unnecessary to pass on these special defenses. We are convinced that there is nothing which would justify this court in reversing the judgment of the lower court and award these plaintiffs the damages they seek.

For the reasons stated, the judgment appealed from is affirmed.