James **ROBERTSON**, Stephanos **L.** Wilburn, Thomas Ganier, and Wilfred Williams, Plaintiffs

v.

**BANANA HANDLERS INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL UNION 1800, AFL–CIO;** Henry Williams, as President; William **H.** Mathews, as Financial Secretary; Jesse Johnson, as Recording Secretary; Frank Jones, as First Vice President; and Dennis Loper, as Second Vice President, Defendants.

Civ. A. No. 9892.

United States District Court
E. D. Louisiana,
New Orleans Division.

April 29, 1960.

I. Jay Krieger, Benjamin E. Smith, New Orleans, La., for plaintiffs.

Adrian G. Duplantier, New Orleans, La., for defendants.

## J. SKELLY WRIGHT, District Judge.

Four former members of the Banana Handlers ILA Local 1800 bring this action for reinstatement and for damages against the Union and its principal officers. They also seek to enjoin an election scheduled for April 17, 1960. Specifically, plaintiffs allege that they were expelled from Union membership illegally, without being advised of the charges against them and without a full fair hearing, and that, by reason of their expulsion, they have been discriminated against by employers, have been denied participation in the nomination of Union officials, and will be precluded from voting in the forthcoming election, which, they suggest, should be enjoined until they are restored to membership and regain their rights to nominate candidates, run for office, and vote.

The statutory basis for the assertion of these claims is alleged to be Section 102 of the Labor-Management Reporting and Disclosure Act, otherwise known as the Landrum-Griffin Act. 29 U.S.C.A. § 412. This section provides redress for violations of Section 101 of the Act, commonly known as the "Bill of Rights." 29 U.S.C.A. § 411.[1] The defendants have moved to dismiss on the ground that the plaintiffs were expelled from the Union before the effective date of the Act, which Act, the Union asserts, has no retrospective application.

Title I of the Act, 29 U.S.C.A. § 411 et seq., which contains the sections in suit, became effective September 14, 1959. It is true that plaintiffs allege matters subsequent to that date, notably denial of participation in nomination procedures in early 1960 and the illegality of an election not yet held. But their complaints in this regard, as well as their claim for damages resulting from unemployment, depend entirely upon the validity of their expulsion, which, in each case, occurred long before September 14, 1959. If they were no longer members of the Union, obviously, they have no claim to participate in its internal affairs or to enjoy the other privileges which flow from membership. The notion that the expulsion is continuing and, hence, must be considered as a present violation, may recommend itself to the metaphysicians, but it does not accord with the more prosaic approach of the law to view a specific act as complete in itself. Moreover, if plaintiffs' theory were accepted the statute of limitations would bar nothing, and courts would now inherit the burden of reviewing all union expulsions, going back at least as far as the adult life span of the oldest living ex-member. Since, as to each plaintiff, expulsion preceded the effective date of the new legislation, this action must fail unless the sections under which plaintiffs proceed provide new rights to redress completed old wrongs.

Nothing in the text, or in its legislative history, indicates that Title I of the Act was intended to apply retrospectively. Nor have plaintiffs pointed to any decision or commentary so interpreting the new law. On the contrary, the only judicial ruling on the issue of retroactivity holds Title I of the Act prospective only. Smith v. General Truck Drivers, etc., Union Local 467, D.C.S.D.Cal., 181 F.Supp. 14.[2] And the Secretary of Labor, charged with enforcement of

---

1. Plaintiffs have also invoked Sections 401 and 402 of the Act, but, except in one particular not here pertinent, these provisions pertaining to elections merely authorize the individual member to file his complaint with the Secretary of Labor, who, in turn, may institute a court action. See 29 U.S.C.A. §§ 481–482.

2. See also, Highway Truck Drivers and Helpers Local 107 v. Cohen, D.C.E.D.

Pa., 182 F.Supp. 608, holding Title V of the Act not to be retroactive. Strauss v. International Brother. of Teamsters, etc., D.C.E.D.Pa., 179 F. Supp. 297, and Jackson v. The Martin Company, D.C.D.Md., 180 F.Supp. 475, merely hold that Section 101 of the Act does not secure any rights of union officers as such, and are inapposite to this discussion.

many provisions of the new Act, including one of the "Bill of Rights" guarantees, notes in his "Six-Month Report of Bureau of Labor-Management Reports" that many cases were closed "when the facts showed that the alleged violations concerned events prior to the effective date of the law \* \* \*." See CCH Labor Law Reports, No. 610, April 7, 1960, Part I, p. 3.

But plaintiffs, conceding that the Act does not in terms provide for retroactivity, argue that Section 102 gives the union member a federal court action to enforce certain rights which were already guaranteed him by prior federal and state law. Stated differently, they contend that before the new law they could bring their complaint for violation of the rights enumerated in Section 101 before the NLRB or the state courts, while now, by virtue of Section 102, they are given an alternative forum, the federal court. Accordingly, they characterize Title I of the Act as a purely remedial statute and claim that it should, therefore, be applied retrospectively.

At the outset, it should be noted that the alternative position now taken by plaintiffs that Section 101 created no new rights, but merely enumerated previously existing rights that can henceforth be enforced at the suit of the individual member in the United States courts, is inconsistent with the allegations in their complaint. There they expressly allege violations of Section 101 of the new Act as though the cited section were the source of the rights claimed to have been infringed. Moreover, plaintiffs fail to point out, in brief or otherwise, where in the body of federal or state law these Section 101 rights were guaranteed to union members before the 1959 Act.

Nevertheless, the issue of whether the Section 101 rights are new or old is not free from doubt. The Act itself offers nothing conclusive, though defendants' argument that the reference in Section 102 to "rights *secured by the provisions of this title*" implies they were *conferred* by the 1959 Act is perhaps more persuasive than plaintiffs' rejoinder that "secured" merely means "confirmed," not "created," by the new law. Nor is the legislative history very helpful on this point, for, while at least one senator viewed the "Bill of Rights" section of the proposed Act as a substantive enactment,[3] others disagreed,[4] and the Congress, as a whole, was apparently unconcerned whether the rights already existed, being convinced that it was, in any event, important to declare them specifically, and make them enforceable at the suit of an individual member in the courts of the United States.

The two suggested older sources of these rights are the Taft-Hartley Act, otherwise known as the National Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., and state law. The guarantee against arbitrary disciplinary action by the union announced by Paragraph (a) (5) of the new "Bill of Rights," 29 U.S.C.A. § 411(a) (5), the only "right" here involved, is not contained in the Taft-Hartley law. The language of that Act does not offer any direct protection against the arbitrary

---

3. Senator Javits, arguing against the McClellan Amendment to the Kennedy-Ives Bill, said, " \* \* \* I believe (a bill of rights) is needed that is declaratory of law, not one which makes law." 105 Daily Cong.Rec., April 22, 1959, p. 5825. See also, Id., pp. 5813–5814. Senators Holland, Clark and Goldwater also expressed doubt whether all the rights included in the new "Bill of Rights" were guaranteed under state law. Id., pp. 5817, 5818, 5823.

4. Senators Kennedy and Morse, opposing the McClellan "Bill of Rights" Amendment, argued that these provisions were unnecessary because all the enumerated rights were already fully guaranteed by the Taft-Hartley Act or state law. 105 Daily Cong.Rec., April 22, 1959, pp. 5816, 5819, 5821. Senator Allott, supporting the inclusion of these provisions, expressed his view that "every one of those rights is either implicitly or impliedly guaranteed to each citizen by the constitution of his own state and by the Constitution of the United States \* \* \*." Id., p. 5822.

expulsion of a member from a union. While it is made an "unfair labor practice" for an employer to discriminate against an employee who has lost union membership for any cause other than non-payment of dues, § 8(a) (3) (ii) (B),[5] or for the labor organization to induce discrimination by the employer in such cases, § 8(b) (2),[6] there is no sanction against the improper disciplinary action itself, and no procedural requirements for expulsion are announced. The only "rights" enjoyed by workers, independently of discrimination against them by employers, are set forth in § 7[7] of Taft-Hartley, which section affords no due process guarantee against disciplinary action. On the contrary, by the proviso of § 8(b) (1) (A)[8] the union expressly retains the privilege of "prescrib[ing] its own rules with respect to the acquisition or retention of membership therein."

 In short, though the Taft-Hartley Act gives the expelled union member a cause of complaint to the NLRB if he is subsequently discriminated against, it grants him no redress against arbitrary expulsion itself. This is, in effect, the ruling of the Supreme Court in International Ass'n of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018, in which the state court action brought by expelled machinists for reinstatement to membership in the union and damages was held proper on the ground that the Taft-Hartley law afforded them no adequate remedy under the circumstances. Thus, it seems clear that no federal law before Section 101 of the 1959 Act protected the worker against improper disciplinary action by his union. Since the complaint here involves only that provision of the new law, we need go no further to conclude that the "Bill of Rights" of the 1959 Act created a new substantive right, at least as far as the federal law is concerned.

 With reference to the unsupported suggestion that state law may be the source of the Section 101 right in suit, it is true that, generally, state courts will review the disciplinary actions of a labor union against its members, and will grant relief where elementary due process requirements have been flouted (see Annotation, 21 A.L.R.2d 1397), but the attitude of the courts varies in different jurisdictions and it is difficult to know exactly what safeguards are prescribed by the law of any given state.[9] Notably, the Louisana jurisprudence on the question is meager and fixes no clear standards. While apparently the courts of this state will require the union to observe the disciplinary procedure announced in its own constitution and by-laws (State ex rel. Willis v. General Longshore Workers, 202 La. 277, 11 So. 2d 589), it is not clear how much further they will go. The tendency seems to be to refrain from interfering in the union's internal affairs and to respect its own procedural rules whenever possible. See Jones v. Hansen, 220 La. 673, 57 So.2d 224; Elfer v. Marine Engineers Beneficial Ass'n No. 12, 179 La. 383, 154 So. 32; State ex rel. Curtis v. Stevedores' & Longshoremen's Benevolent Ass'n, 43 La. Ann. 1098, 10 So. 169. In the light of these decisions, it cannot be said with assurance that Louisiana guarantees the union member the full safeguards against improper disciplinary action announced in the new federal Act, which confers the enumerated rights unconditionally, without regard to any contrary provision in the organization's constitution or by-laws. § 101(b), 29 U.S.C.A. § 411(b).

 There being no pre-existing right under state or federal law, it must be concluded that Title I of the 1959 Act, at least so far as the provisions relating to disciplinary action are concerned, not only gave a new remedy, but conferred a new substantive right on members of

---

5. 29 U.S.C.A. § 158(a) (3) (ii) (B).

6. 29 U.S.C.A. § 158(b) (2).

7. 29 U.S.C.A. § 157.

8. 29 U.S.C.A. § 158(b) (1) (A).

9. See Note 3.

labor organizations, and imposed a corresponding new liability on the union and its officers. The language of the Court of Appeals for the Ninth Circuit in Schatte v. International Alliance, etc., 182 F.2d 158, 164, denying retroactive application of Section 301 of the Taft-Hartley Act, 29 U.S.C.A. § 185, may likewise be applied to the latest venture of Congress into the field of labor legislation:

"* * * Section 301 was not enacted merely to provide a new forum for the enforcement of contracts theretofore enforceable solely in the state courts. Had such been its sole purpose the constitutionality of the section as to actions in which diversity of citizenship was lacking might well be questioned. But the wording of the section and its place in the Taft-Hartley Act demonstrates that the section was designed to protect interstate and foreign commerce by creating a new substantive liability, actionable in the federal courts, for the breach of a collective bargaining contract in an industry affecting interstate or foreign commerce. * * *" [10]

The finding that the provision of the 1959 Act here invoked creates a new substantive right prohibits retrospective application.[11] Even if the statute were considered procedural or remedial, retroactivity is not to be presumed. The Supreme Court in Claridge Apartments Co. v. Comm'r., 323 U.S. 141, 164, 65 S.Ct. 172, 185, 89 L.Ed. 139, said: "* * * Retroactivity, even where permissible, is not favored, except upon the clearest mandate. * * *" See, also, United States v. St. Louis, etc.

Ry. Co., 270 U.S. 1, 3, 46 S.Ct. 182, 70 L.Ed. 435; United States Fidelity Co. v. U. S. for Use and Benefit of Struthers Wells Co., 209 U.S. 306, 313, 316, 28 S.Ct. 537, 52 L.Ed. 804. In the absence of any legislative indication of retroactive intent, this well-established rule of construction would, in any event, compel the conclusion that the Act is not to be applied retrospectively.

Accordingly, defendants' motion to dismiss must be granted.

---

10. Followed in Studio Carpenters Local Union 946 v. Loew's Inc., 9 Cir., 182 F. 2d 168, and MacKay v. Loew's Inc., 9 Cir., 182 F.2d 170, 18 A.L.R.2d 348. See also, Association of Westinghouse Salaried Emp. v. Westinghouse Elec. Corp., 3 Cir., 210 F.2d 623, 625; United Electrical, Radio & Mach. Workers of America v. Oliver Corp., 8 Cir., 205 F.2d 376, 384-385; Annotation, 17 A.L.R.2d 614, 620 ff.

11. Bruner v. United States, 343 U.S. 112, 117, note 8, 72 S.Ct. 581, 96 L.Ed. 786; Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858; Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457; United States v. Magnolia Petroleum Co., 276 U.S. 160, 162-163, 48 S.Ct. 236, 72 L.Ed. 509; Shwab v. Doyle, 258 U.S. 529, 534-535, 42 S.Ct. 391, 26 A.L.R. 1454; Hiatt v. Hilliard, 5 Cir., 180 F.2d 453, 455.