ENOS C. McCLENDON, Jr., Judge ad hoc.
This suit began quite simply in 1940 as a suit on a promissory note then eleven years old, but kept alive by acknowledgments of the maker and an interest payment.
Judgment by default on November 20, 1940, was followed by unsuccessful efforts to collect same for some nine and one-half years.
Appeal from a judgment reviving the 1940 judgment resulted in reversal and a declaration by the Supreme Court of this State that the 1940 judgment was null because based upon an improper domiciliary service of citation. Wilson v. King, 227 La. 546, 79 So.2d 877 (1955).
Personal service and citation on the defendant in 1955 was met by an exception to this service followed later by motion to dis-’ miss for want of prosecution in five years or abandonment. Appeal by plaintiff from judgment dismissing his suit resulted in a second reversal by the Supreme Court declaring that the abandonment statute did not apply to the case in which final judgment was obtained and later set aside and even if it had been applicable defendant here waived such right by excepting to the service first. The case was remanded. Wilson v. King, 233 La. 382, 96 So.2d 641 (1957).
Back before the District Court, defendant filed exceptions of no cause or right of action, prematurity, res judicata and prescription, and finally an answer alleging payment. After overruling all exceptions, the trial court awarded plaintiff judgment as originally prayed for on the note.
From this judgment defendant appealed devolutively exactly one year later on May 8, 1959.
We find no error in the lower court’s decision on the merits, it being based upon the defendant’s failure to sustain the burden of proof of payment of the obligation as alleged in his answer, and we limit our review to the rulings on the various exceptions re-urged here by defendant.
Briefly stated the facts are that defendant borrowed $4,840.00 from plaintiff and executed his promissory note to plaintiff’s order on June 1, 1929, due on demand, bearing seven (7%) percent per annum interest from date and providing for ten (10%) percent attorney’s fees, if not paid when due and placed in the hands of an attorney for collection. Payment was secured by pledge of one share of stock of the New Orleans Cotton Exchange #5327 noted on the back of the note. Defendant acknowledged the indebtedness in writing on the back of the note on May 20, 1934. By separate letter of June 22, 1957, he authorized plaintiff to sell the pledged stock for the price of $1,-410.00 to be applied first to past due interest and then to principal. The sale was made and the note credited on that same date with $1,410.00 interest. Defendánt again acknowledged the principal indebtedness and interest due from June 24, 1935, by written and signed notation on the back of the note on June 19, 1939.
Suit on this note in 1940 resulted in the first judgment by default on November 20, 1940, which was declared a nullity by the Supreme Court in 1955 as outlined above.
Defendant’s plea of res judicata is based upon the argument that the note ceased to exist as an obligation after being reduced to judgment in 1940, and that the revival judgment continued the 1940 judgment in effect for the five years until it was set aside by the Supreme Court. Thereafter, when the matter was back in court in . 1958, between the same parties on the same cause of action and for the same object, he contends the plea should have been sustained.
This argument is not sustained by the Supreme Court’s holdings in this case *130 wherein it declared the service of the original petition and citation on a domestic not residing at the defendant’s home to be invalid and judgment based upon such service a nullity. That 1940 judgment having been declared null the parties were then back in the position they were in 1940 with a petition filed by plaintiff and no valid service or citation. Plaintiff continued prosecution of his action at this point by obtaining valid personal service.
Prescription is interrupted by the filing of a suit on the cause of action in a court of competent jurisdiction. LSA-R.S. 9:5801.
Prescription is interrupted by judicial demand and such interruption works a suspension during pendency of the suit. Federal Insurance Co. v. T. L. James & Co., La.App., 69 So.2d 636.
Although plaintiff’s judgment was declared null, all prescription had been suspended during the pendency of this suit and he had never abandoned his efforts 'to prosecute it to a valid judgment. The competency of the Civil District Court of Orleans Parish to hear this suit between these parties has never been questioned.
Defendant’s pleas of prematurity and no cause or right of action were aimed at the failure of plaintiff to abide by some alleged rules of the New Orleans Cotton Exchange, of which both parties were members during the period immediately prior to filing of the suit, requiring all members to submit any dispute between them to arbitration before resorting to legal action.
 The lower court excluded the unidentified copy of the alleged Cotton Exchange rules and, we think, properly so. This is a suit on a contract and not a dispute involving the internal affairs of a voluntary association or a dispute between members arising out of their membership or activities in such an association. The mere fact that they were both members of the Exchange at the time plaintiff elected to demand payment of the past due promissory note would not divest the courts of this State of jurisdiction of this cause of action. This is particularly so when no reference is made to such rules or their application to this transaction in the note itself, which, as the lower court so aptly stated, is the law between these parties as to this contract.
The cases cited by defendant in this connection (Jones v. Hansen, 220 La. 673, 57 So.2d 224; and Elfers v. Marine Engineers Beneficial Association No. 12, et al., 179 La. 383, 154 So. 32) both deal with internal affairs of the respective associations and disciplinary measures against members. It is our opinion that it was not the intention of the Supreme Court to hold that such associations could substitute themselves for the judiciary of this State in the determination or enforcement of rights and obligations arising out of contracts between members, which contracts are unrelated to the internal operation, policy or discipline of the members of the associations.
Finally we consider defendant’s argument in brief that failure of plaintiff to sell the pledged share of stock before it declined in value below the amount due on the note constituted “payment”.
This is a most novel approach and the only authority cited in support thereof is a quotation from Vol. 72 Corpus Juris Secun-dum Pledges § 57, page 116. We quote it herein for the purpose of reference and examination :
“A contract of pledge which contains a stipulation authorizing the pledgee to sell does not deprive him of his option to sell or not as he sees fit. If there is a stipulation that the pledgee shall sell within a specified time after default, it is his duty to do so, and his failure in this constitutes a breach of duty for which he is liable in damages to the pledgor, without any previous notice or demand by the pledgor.”
*131 Certainly defendant can derive little comfort or support from the first sentence of the quotation. Neither does the second sentence support his position that failure to sell timely constitutes “payment” of the obligation secured by the pledge.
The law of Louisiana regarding this situation is found in LSA-Civil Code Article 3165, which reads as follows:
“The creditor cannot, in case of failure of payment, dispose of the pledge; but when there have been pledges of stock, bonds or other property, for the payment of any debt or obligation, it shall be necessary before such stocks, bonds or other property so pledged shall be sold for the payment of the debt, for which such pledge was made, that the holder of such pledge be compelled to obtain a judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of the property so pledged as in ordinary cases; but in all pledges of movable property, or rights, or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties without the intervention of courts of justice; provided, that all existing pledges shall remain in force and be subject to the provisions of this act.”
Until the article was amended in 1872 such a clause as we are considering here was null. There is still nothing mandatory in the language. It is entirely permissive that the parties so agree.
Examination of the printed note form used by the parties reveals that it was contemplated for use by the Canal Bank & Trust Company, Baronne and Common Streets, New Orleans, and the sentence relied upon by defendant in the printed portion reads as follows:
“At the maturity of this note, or when otherwise due, as above provided, any and all money, stocks, bonds or other securities or property of any nature whatsoever on deposit with, or held by, or in possession of, said bank as collateral or otherwise to the credit or for account of the makers, endorsers or other parties hereto, or any of them, shall be and stand applied forthwith to the payment of this note, or any other indebtedness due said bcmk by said parties, or any of them.” (Emphasis added.)
If, in spite of this language referring specifically to the bank, this could be said to have been the agreement between the parties actually using this form, we believe defendant would have been demanding that plaintiff sell the stock and apply it to the indebtedness in accordance with said agreement before it declined in value below the balance then due under the note. Defendant, as a member of the Cotton Exchange, must have been well aware of the day to day value of his pledged share of stock during all of that period of time.
The record reveals that to the contrary when such action, i. e., sale of the pledged stock, was suggested by plaintiff, the defendant refused to permit it. When he did finally agree to the sale in 1937, as evidenced by his letter addressed to plaintiff for that specific purpose, there was no evidence of dissatisfaction over plaintiff’s failure to have exercised his “duty” to sell sooner as is now contended.
For these reasons we conclude that the lower court has correctly disposed of each issue presented and its judgment is affirmed.
Affirmed.