351 F.2d 72
 Ralph KNOX, Plaintiff-Appellant,
v.
INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT, AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, and Local 900,
United Automobile, Aircraft, and Agricultural Implement
Workers of America, Defendants-Appellees.
 No. 15752.
 United States Court of Appeals Sixth Circuit.
 Oct. 12, 1965.
 
 Larry S. Davidow, Detroit, Mich., Davidow & Davidow, Detroit, Mich., on brief, for appellant.
 John A. Fillion, Detroit, Mich., Joseph L. Rauh, Jr., Stephen I. Schlossberg, Jordan Rossen, Detroit, Mich., on brief, for appellees.
 Before MILLER, O'SULLIVAN and PHILLIPS, Circuit Judges.
 PHILLIPS, Circuit Judge.
 
 
 1
 This is a suit under the Labor-Management Reporting and Disclosure Act of 1959, better known as the Landrum-Griffin Act, 29 U.S.C.A. 401 et seq., for the wrongful expulsion of a member from a labor union. Plaintiff prays 'to be re-established to all the full privileges, benefits and rights of a member in good standing' and for $200,000 in damages.
 
 
 2
 The district court dismissed the action on the ground that the court lacks jurisdiction, holding that (1) the expulsion of plaintiff from the union took place before September 14, 1959, the effective date of the Labor-Management Reporting and Disclosure Act, and that the Act is not retroactive; and (2) the claim of plaintiff that the union has not represented him fairly and thereby has caused him to suffer pecuniary damages presents a matter within the exclusive jurisdiction of the National Labor Relations Board. We agree with the opinion of Chief Judge Levin, which is reported in 223 F.Supp. 1009, and accordingly affirm the judgment of the district court.
 
 
 3
 The plaintiff was one of the organizing members of defendant International Union and a charter member of Local 212, which are hereinafter referred to as the union. In 1938 he was expelled from membership for promoting a rival union. His expulsion was effected without notice or a hearing. In the latter part of 1939 he obtained a job at the Rouge Plant of Ford Motor Company, where he worked until 1941, when he was forcibly removed by a number of union stewards and committeemen, who insisted that he not be permitted to work further. After working with other industrial concerns he returned to Michigan and obtained employment at the Lincoln Plant of Ford Motor Company in January 1946. Ford Motor Company had a union shop agreement with the union. Plaintiff executed the check-off agreement, under which Ford withheld and remitted to the union monthly dues from the wages of employees. Ford began paying the monthly dues to the union and is still doing so. Plaintiff attended union meetings and participated as an active member of the union for several years.
 
 
 4
 In 1953 officials of the union became aware of plaintiff's 1938 expulsion. The union thereupon ceased treating him as a member and has since refused to allow him to participate in any union activities, such as membership meetings and elections. He has not been discharged by Ford.
 
 
 5
 He contends that his 1938 ouster was illegal because of lack of notice and hearing, and that since his 1953 ouster the union has discriminated against him in not getting him employment at better wages, including overtime. In July 1955 he filed suit in a Michigan state court, complaining of the alleged illegal action taken against him by the union. The suit was dismissed on the ground that he had failed to exhaust his remedies within the union. This holding was affirmed by the Supreme Court of Michigan. Knox v. Local 900, etc., UAW-CIO, 361 Mich. 257, 104 N.W.2d 743. The plaintiff then pursued the remedies within the union without success. The union's International Executive Board, after a hearing, denied his appeal. The UAW Public Review Board, to which plaintiff appealed from the decision of the International Executive Board, affirmed.
 
 
 6
 There may be a question as to whether plaintiff was ousted effectively from the union in 1938, in view of the fact that he apparently was restored to membership when he became an employee of Ford in 1946 and was recognized as a member of the union. Regardless of whether the 1938 ouster was effective, however, his 1953 ouster took place before the effective date of the Labor-Management Reporting and Disclosure Act of 1959. Therefore the district court was correct in holding that it does not have jurisdiction under that statute, which is not retroactive. Krulikowsky v. Metropolitan Dist. Council of Philadelphia and Vicinity, 212 F.Supp. 338, 340 (E.D.Pa.); Rappaport v. IAM, 202 F.Supp. 235, 237 (N.D.Ill.); Lankford v. IBEW, 196 F.Supp. 661, 662 (N.D.Ala.), aff'd, 293 F.2d 928 (C.A.5), cert. denied, 368 U.S. 1004, 82 S.Ct. 625, 7 L.Ed.2d 543; Durandetti v. Chrysler Corp., 195 F.Supp. 653, 656 (E.D.Mich.); Highway Truck Drivers and Helpers Local 107 v. Cohen, 182 F.Supp. 608 (E.D.Pa.), aff'd, 284 F.2d 162 (C.A.3), cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744; Smith v. General Truck Drivers, 181 F.Supp. 14, 18 (S.D.Cal.).
 
 
 7
 Plaintiff argues that the wrong committed by the union is a continuing one and thereby is subject to the provisions of the Act. We find this contention to be without merit. As said in Robertson v. Banana Handlers International Longshoremen's Association, 183 F.Supp. 423, 424 (E.D.La.):
 
 
 8
 'The statutory basis for the assertion of these claims is alleged to be Section 102 of the Labor-Management Reporting and Disclosure Act, otherwise known as the Landrum-Griffin Act. 29 U.S.C.A. 412. This section provides redress for violations of Section 101 of the Act, commonly known as the 'Bill of Rights.' 29 U.S.C.A. 411. The defendants have moved to dismiss on the ground that the plaintiffs were expelled from the Union before the effective date of the Act, which Act, the Union asserts, has no retrospective application.
 
 
 9
 'Title I of the Act, 29 U.S.C.A. 411 et seq., which contains the sections in suit, became effective September 14, 1959. It is true that plaintiffs allege matters subsequent to that date, notably denial of participation in nomination procedures in early 1960 and the illegality of an election not yet held. But their complaints in this regard, as well as their claim for damages resulting from unemployment, depend entirely upon the validity of their expulsion, which, in each case, occurred long before September 14, 1959. If they were no longer members of the Union, obviously, they have no claim to participate in its internal affairs or to enjoy the other privileges which flow from membership. The notion that the expulsion is continuing and, hence, must be considered as a present violation, may recommend itself to the metaphysicians, but it does not accord with the more prosaic approach of the law to view a specific act as complete in itself. Moreover, if plaintiffs' theory were accepted the statute of limitations would bar nothing, and courts would now inherit the burden of reviewing all union expulsions, going back at least as far as the adult life span of the oldest living ex-member. Since, as to each plaintiff, expulsion preceded the effective date of the new legislation, this action must fail unless the sections under which plaintiffs proceed provide new rights to redress completed old wrongs.'
 
 
 10
 Plaintiff further claims that following the 1953 ouster the union has discriminated against him with respect to his employment. We agree with the district court that this is a claim of an unfair labor practice under 29 U.S.C. 158(b)(1)(A) and 158(b)(2). Such claims are within the exclusive jurisdiction of the National Labor Relations Board. Barunica v. United Hatters, etc., Local Number 55, 321 F.2d 764, 766 (C.A.8); Beauchamp v. Weeks, 48 LRRM 3048 (S.D.Cal.)
 
 
 11
 The order of the district court granting the motion to dismiss the complaint is affirmed.