## NATIONAL LABOR RELATIONS BOARD v. INDIANA & MICHIGAN ELECTRIC CO.

No. 8844.

Circuit Court of Appeals, Sixth Circuit.

Dec. 12, 1941.

H. M. Kollender, of Washington, D. C. (Robert B. Watts, Laurence A. Knapp, Ernest A. Gross, Richard C. Barrett, and Margaret Holmes McDowell, all of Washington, D. C., on the brief), for petitioner.

Murray Seasongood, of Cincinnati, Ohio, and Eli F. Seebirt, of South Bend, Ind. (Seebirt, Oare & Deahl, of South Bend, Ind., and Paxton & Seasongood, of Cincinnati, Ohio, on the brief), for respondent.

William E. Voor, of South Bend, Ind., for Michiana Electrical Utility Workers Ass'n.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

This case is before the court on petition of the National Labor Relations Board for enforcement of its order issued against respondent pursuant to Section 10(c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 160(c). The jurisdiction of the court rests on Section 10(e) of the Act, 49 Stat. 453, 29 U.S.C.A. § 160(e).

On November 12, 1938, the International Brotherhood of Electrical Workers, Local B-9, an affiliate of the American Federation of Labor, filed with the Board against the respondent a charge of unfair labor practices within the meaning of Section 8(1) (2) (3) of the Act, 29 U.S.C.A. § 158(1–3). It was alleged in the charge that respondent had, through its officers and agents, questioned its employees in regard to their union affiliation and warned them against activities on behalf of, and discouraged membership in, unions of outside affiliations. It also charged that the respondent, through its officers and agents, had aided in the formation, sponsored, contributed financial support and had interfered with, a labor organization of its employees known as the Michiana Utility Workers Association. The Board, on November 12, 1938, issued its complaint against respondent, charging it with a violation of Section 8(2) of the Act, by initiating, fostering and promoting among its employees the labor organization referred to in the charge.

It was further charged in the complaint that the respondent had, since May 1, 1937, down to and including the date the complaint was filed, coerced its employees to join and pay dues to the workers' association and that it was continuing to support financially and dominate this association.

Respondent resists enforcement of the Board's order on six grounds, (1) lack of jurisdiction by the court, (2) absence of necessary and proper parties, (3) denial of respondent's motion before the Board to reopen the proceedings for further proof, (4) bias and prejudice of the trial examiner, (5) absence of findings of ultimate facts, (6) lack of substantial evidence to support Board's order.

Respondent is an Indiana corporation with its principal place of business at South Bend, Indiana, and is engaged in the generation, transmission, distribution and sale of electrical energy, and is also engaged in the purchase and sale of electrical appliances in the States of Indiana and Michigan. As a part of its business, respondent owns and operates hydro-electric generating stations, steam turbine plants and transmission and distribution lines in Michigan and Indiana.

The unfair labor practices found by the Board occurred in the State of Indiana. Some of the minor incidents which the Board found culminated in the organization of the employees' association occurred in the State of Michigan. Section 10(e) of the Act empowers the Board to petition any Circuit Court of Appeals within any circuit wherein the unfair labor practice in question occurred or wherein such

person resides or transacts business, for enforcement of its orders.

The respondent urges that we should decline jurisdiction in the interest of justice under the doctrine of "forum non conveniens." See Canada Malting Company v. Paterson Steamships, 285 U.S. 413, 423, 52 S.Ct. 413, 76 L.Ed. 837.

Venue, under the National Labor Relations Act, is wholly a matter for the Congress. It is manifest from the statute in question that the Congress has conferred jurisdiction on the Circuit Court of Appeals wherever the employer found guilty of unfair labor practices transacts business. It is conceded that respondent is carrying on business within the territorial limits of this court. Eastman Company v. Southern Photo Company, 273 U.S. 359, 373, 47 S.Ct. 400, 71 L.Ed. 684.

Our jurisdiction of the present case cannot be declined or renounced, even though it may appear preferable that the cause should have been brought in another jurisdiction authorized by the statute. National Labor Relations Board v. Friedman-Harry Marks Clothing Company, 2 Cir., 83 F.2d 731.

The Board found respondent had violated Section 8(1) (2) of the Act. The facts constituting the violation were found to be that the respondent, through the activity of a large number of its supervisory employees and officials, had set up and fostered among its employees, the Michiana Electric Utility Workers Association, the organization of which defeated the genuine self-organization of respondent's employees and that respondent presently contributed to the financial support of the association, and dominated its affairs. It also found that the respondent had entered into a written bargaining contract with the association, and in its order directed respondent to cease giving effect to this contract, and to withdraw all recognition from and completely disestablish the association as the collective bargaining representative of its employees and to post appropriate notices.

The association was not made a party to the proceedings before the Board, but has filed in this action a motion to intervene. Respondent insists that the Board's order is void, because of the absence of the association as a party in the proceedings before the Board. Inherently, the questioned contract was free from unfair labor practices and was of the substance usually found in collective bargaining agreements.

Section 10(b) of the Act, 49 Stat. 453, 29 U.S.C.A. § 160(b), provides "in the discretion of the member, agent or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony." The respondent and the association insist that the Board abused its statutory discretion in failing to make the Michiana Electric Utility Workers Association a party, and they urge on us that, in the interest of fair play, the order of the Board should be set aside and the cause remanded to the Board with directions to permit the association to introduce further proof and cross examine the Board's witnesses. The issue raised is not free from doubt.

In the case of National Labor Relations Board v. Greyhound Lines, 303 U.S. 261, 271, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307, the charge of unfair labor practice was based on the fact that the employer had created and fostered a labor organization of its employees and had dominated its administration. The Board's order required the employer to withdraw recognition from the employee organization as employee representative. The facts showed that before the enactment of the National Labor Relations Act, the Greyhound Lines initiated a project for the organization of its employees under company domination. Its executive officers were active in promoting the plan and in urging employees to join, and aided in the details of organization and in selection of employee representatives of the organization. Under the by-laws and regulations, all motorbus operators, maintenance men and clerical employees, after three months' service, automatically became members of the association and only employees were eligible to act as employee representatives. No provisions were made for regular meetings or methods outlined for dissemination of information. Grievances were to be taken up with regional committees, with final review by a joint Reviewing Committee composed of an equal number of regional chairmen and management representatives, but to obtain such review the controversy must have been by joint submission of employee and management representatives. The by-laws could not be changed except by a two-thirds vote of the Joint Reviewing Committee composed of equal numbers of em-

ployer and employee representatives. No dues were paid, and all expenses were borne by the management. The Association functioned only to settle individual grievances. On one occasion, when the employees sought a wage increase, the company refused to join in submission to the Joint Reviewing Committee, which prevented submission. There, as here, respondent insisted that the Board's order was void because the Association was not made a party to the proceedings.

The court, in deciding that the absence of the Association was not fatal to the order, said:

"As the order did not run against the Association it is not entitled to notice and hearing. Its presence was not necessary in order to enable the Board to determine whether respondents had violated the statute or to make an appropriate order against them. See General Investment Co. v. Lake Shore & M. S. Ry. Co., 260 U.S. 261, 285, 286, 43 S.Ct. 106, 116, 67 L.Ed. 244." 303 U.S. 271, 58 S.Ct. 576, 82 L.Ed. 831, 115 A.L.R. 307.

In the case of Consolidated Edison Company v. National Labor Relations Board, 305 U.S. 197, 239, 59 S.Ct. 206, 83 L.Ed. 126, the charge of unfair labor practice was based on the fact that the Consolidated Edison Company and its affiliates' were interfering with the right of their employees to form, join or assist labor organizations of their own choosing and were contributing financial and other support to the International Brotherhood of Electrical Workers, an affiliate of the American Federation of Labor. The order directed the company to desist from lending aid or support to the International Brotherhood. The findings of the Board showed the company had entered into bargaining contracts with the Brotherhood on behalf of its employees and the Board found that these contracts were invalid and in its order required the Edison Company and its affiliates to desist from giving effect to the contracts.

The Brotherhood and its locals were not made parties to the proceedings before the Board, but petitioned the Circuit Court of Appeals, 2 Cir., 95 F.2d 390, for a review of the Board's order and there contended that they were indispensable parties and that, in the absence of legal notice to them or their appearance, the Board had no authority to invalidate the contracts. The Supreme Court, in holding that the order of the Board was void because of the absence of necessary parties, said:

"The Board contests this position, invoking our decision in National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307. That case, however, is not apposite, as there no question of contract between employer and employee was involved. The Board had found upon evidence that the employer had created and fostered the labor organization in question and dominated its administration in violation of section 8(2). The statement that the 'Association' so formed and controlled was not entitled to notice and hearing was made in that relation. [Id., 303 U.S.] pages 262, 270, 271, 58 S.Ct. [571], pages 572, 576, [82 L.Ed. 831, 115 A.L.R. 307]. It has no application to independent labor unions such as those before us. We think that the Brotherhood and its locals having valuable and beneficial interests in the contracts were entitled to notice and hearing before they could be set aside. Russell v. Clark's Executors, 7 Cranch 69, 96, 3 L.Ed. 271; Mallow v. Hinde, 12 Wheat. 193, 198, 6 L.Ed. 599; Minnesota v. Northern Securities Co., 184 U.S. 199, 235, 22 S.Ct. 308, 322, 46 L.Ed. 499; Garzot v. Rios de Rubio, 209 U.S. 283, 297, 28 S.Ct. 548, 554, 52 L.Ed. 794; General Investment Co. v. Lake Shore & M. S. Co., 260 U.S. 261, 285, 43 S.Ct. 106, 116, 67 L.Ed. 244. The rule, which was applied in the cases cited to suits in equity, is not of a technical character but rests upon the plainest principle of justice, equally applicable here. See Mallow v. Hinde, supra." 305 U.S. 232, 233, 59 S.Ct. 218, 83 L.Ed. 126.

In National Licorice Company v. National Labor Relations Board, 309 U.S. 350, 366, 60 S.Ct. 569, 84 L.Ed. 799, the charge of unfair labor practice was based on the fact that the National Licorice Company had entered into individual contracts with its employees wherein each had agreed not to strike or demand a closed shop, or sign an agreement with any union for collective bargaining and the agreement also provided for arbitration or mediation as to wages and hours and the propriety of an employee's discharge. The contracts were procured with the aid of a committee of employees which was created for that purpose and dominated by the employer. The committee thus selected thereafter retained no function other than that of joining the employer in the selection of an arbitrator.

The order of the Board precluded the employer from deriving any benefit from the contracts and from carrying out any of their provisions. The National Licorice Company insisted the Board's order was void because the respective contract employees were not made parties to the proceeding. The court, in holding the employees were not necessary parties, said:

"The proceeding authorized to be taken by the Board under the National Labor Relations Act is not for the adjudication of private rights. Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738; H. Rept. No. 1147, 74th Cong., 1st Sess. Committee on Labor, p. 24; cf. Federal Trade Commission v. Klesner, 280 U.S. 19, 50 S.Ct. 1, 74 L.Ed. 138, 68 A.L.R. 838. It has few of the indicia of a private litigation and makes no requirement for the presence in it of any private party other than the employer charged with an unfair labor practice. The Board acts in a public capacity to give effect to the declared public policy of the Act to eliminate and prevent obstructions to interstate commerce by encouraging collective bargaining and by protecting the 'exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment * * *.' § 1. The immediate object of the proceeding is to prevent unfair labor practices which, as defined by §§ 7, 8, are practices tending to thwart the declared policy of the Act. To that end the Board is authorized to order the employer to desist from such practices, and by § 10(c) it is given authority to take such affirmative remedial action as will effectuate the policies of the Act. National Labor Relations Board v. Pennsylvania Greyhound [Lines], supra.

"In a proceeding so narrowly restricted to the protection and enforcement of public rights, there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights. Ordinarily where the rights involved in litigation arise upon a contract, courts refuse to adjudicate the rights of some of the parties to the contract if the others are not before it. Shields v. Barrow, 17 How. 130, 140, 15 L.Ed. 158; Carroll v. New York Life Ins. Co., 8 Cir., 94 F.2d 333; cf. Waterman v. Canal-Louisiana Bank Co., 215 U.S. 33, 48, 30 S.Ct. 10, 14, 54 L.Ed. 80. Such a judgment or decree would be futile if rendered, since the contract rights asserted by those present in the litigation could neither be defined, aided nor enforced by a decree which did not bind those not present." 309 U.S. 362, 363, 60 S.Ct. 576, 84 L.Ed. 799.

■ As we view the three foregoing controlling decisions of the Supreme Court, none of which expressly overrules the other, the test to be applied as to whether the parties to bargaining contracts are necessary parties to a proceeding under the National Labor Relations Act is (1) if the facts show the right asserted by the Board is one arising solely out of the contract, the performance of which does not inherently result in a violation of the provisions of the Act, the beneficiaries of the contract or their representatives are necessary parties. (2) If the facts show that the contract is inherently unfair, or its performance will result in the continuance of unfair labor practices as defined in the Act, the beneficiaries of the contract or their representatives are not necessary parties, but may be made parties to the proceedings in the discretion of the Board.

In the Greyhound Lines and National Licorice cases, the facts found by the Board showed that the contracts were inherently unfair and their performance a continuing violation of the Act. Under these conditions the contracts were void ab initio. In the Edison Company case, the labor organization having the contract was independently established and was not under the control of the employer and the performance of the contract resulted in no violation of the Act. This interpretation of these cases reconciles them and eliminates all conflicts.

■ In the case at bar, the Board found that respondent caused the Association to be organized and dominated it in the performance of the bargaining contract. It therefore follows that it is controlled by the Greyhound Lines and National Licorice Company cases and the association was not a necessary party to the proceedings.

Respondent moves the court for an order remanding this cause to the Board with directions to receive evidence concerning the criminal activity of the International Brotherhood of Electrical Workers which filed the charges supporting the present complaint.

The intermediate report of the Trial Examiner was filed with the Board on July

1, 1939, and on August 29, 1939, the respondent filed its exceptions thereto. On November 9, 1939, the matter was orally argued and taken under submission by the Board. Respondent contended at the hearing, in its exceptions to the Examiner's intermediate report and in its brief, that the charges filed by the International Brotherhood of Electrical Workers were in bad faith and that no bona fide controversy with reference to unfair labor practices committed by respondent existed between it and its employees. It further alleged that the purpose of the Brotherhood in filing the charges against it, was to cause respondent to require its employees, in violation of the National Labor Relations Act, to join the Brotherhood. In its petition for an order to reopen the case before the Board, respondent alleged that since November 23, 1938, its property had been destroyed in violation of the laws of Indiana and Michigan and charged many acts of violence.[1]

It further alleged that since February 1, 1940, John R. Marks, Earl Freeman, Parish Freeman, Frank Lung and Laurence Yax had been arrested at South Bend, Indiana, all charged with the crime of destroying petitioner's property, and that all of the parties, other than Marks, had confessed and plead guilty to the offenses in the state courts of Indiana and that each of the confessing defendants had stated that Marks had paid them $2,325.00 to dynamite respondent's property. The present record shows that Samuel Guy, business manager of the Brotherhood, John R. Marks, assist-

ant business manager, and Earl Freeman testified to material facts on which the Trial Examiner and the Board based their findings.

In respondent's motion for a remand hearing, it is alleged that in March 1941, Marks, Lung and Freeman were convicted in the Elkhart Circuit Court of Indiana for the destruction of respondent's property and sentenced to the penitentiary. The Board overruled respondent's motion to reopen the case solely on the ground that the tendered evidence is without relevancy and admitting it to be true, it would present no ground for setting aside the Board's order requiring respondent to cease and desist from violating Section 8(1) (2) of the Act and to take appropriate affirmative action to redress these unfair labor practices.

Petitioner urges on us that the Board is administering a public statute and not an act for the redress of private wrongs (Amalgamated Utility Workers v. Consolidated Edison Company, 309 U.S. 261, 265, 60 S.Ct. 561, 84 L.Ed. 738) and further that when the jurisdiction of the Board is once invoked, it must proceed with its statutory duty to prevent conduct found by the Congress to be inimical to the public interest. From this premise it urges that misconduct of the Brotherhood is entirely immaterial. Respondent urges on us that the tendered evidence is material for two purposes, (1) showing that the Brotherhood is not a bona fide labor organization and therefore the charges filed by it with the Board have no relation to the statutory purposes expressed in the National Labor

---

[1] (a) Dynamiting of cables at sub-station on South Main Street, immediately south of Ewing Avenue, South Bend, Indiana, on November 24, 1938, 7:25 P. M.

(b) Sawing off 3 transmission line poles on the Douglas Road ½ mile east of Ironwood Drive in the vicinity of South Bend on September 5, 1939, at 3:25 A. M.

(c) Dynamiting of tower No. 106 on transmission line, one mile north of Sumnerville, Michigan, on September 8, 1939, at 2:30 A. M.

(d) Dynamiting of tower No. 61 on transmission line, located 5 miles east of Niles, Michigan, and 2½ miles south of M-60 on October 19, 1939, at 9:01 P. M.

(e) Dynamiting of a transmission line pole on the Auten Road 1½ miles east of US-31, St. Joseph County, Indiana, on October 28, 1939, at 8:25 P. M.

(f) Dynamiting of transmission line pole located on the old interurban right of way, ½ mile south of the Michigan State Line in St. Joseph County, Indiana, ¼ mile west of US-31 on October 28, 1939, at 8:20 P. M.

(g) Dynamiting of tower No. 75 on transmission line near Arcola, Indiana, on October 30, 1939, at 6:10 A. M.

(h) Dynamiting of tower No. 170 on transmission line located 2 miles east of Ligonier, Indiana, and one mile south of US-6, on November 23, 1939, at 9:10 P. M.

(i) Dynamiting of tower No. 119 on transmission line located 2½ miles east of Benton, Indiana, on November 23, 1939, at 9:54 P. M. That in each of the instances (b) to (i) the lines dynamited or cut carried a high voltage of electricity, and some of said lines were located along public highways or railroad tracks.

Relations Act and, (2) impeaching the credibility of witnesses before the Board on whose testimony the Board relied for its finding of ultimate facts.

The Brotherhood had twelve members out of respondent's one thousand employees, and its general membership was composed of electrical wage workers. Among its alleged objects were the settlement of disputes with employers, reduction of working hours, procurement of adequate pay and promotion of the welfare of its members. It is affiliated with the American Federation of Labor, has 2500 members and represents workers in Illinois and Indiana.

■ The question of whether the criminal syndicalism disclosed in the proffered evidence is chargeable to the Brotherhood and was committed in retaliation for respondent's refusal to assist the Brotherhood in the organization of respondent's employees and to recognize the Brotherhood as the employees' bargaining representative, is one of fact and should be considered by the Board.

■ The National Labor Relations Board lacks jurisdiction to issue a complaint against an employer for engaging in an unfair labor practice as defined in the Act until an informer authorized to do so has filed a charge with the Board. Section 10(b) National Labor Relations Act, 49 Stat. 453, 29 U.S.C.A. § 160(b).

■ The only persons authorized to file a charge under the Act are employees (but not limited to employees of a particular employer) whose work has ceased as a consequence of, or in connection with, any current labor dispute, or because of any unfair labor practice of an employer, or an agency or employee representative committee or plan, in which employees participate and which exist for the purpose in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work. Sections 2(3) (5) of the National Labor Relations Act, 49 Stat. 450, 29 U.S.C.A. § 152(3) (5).

■ A labor organization filing a charge with the Board must have some direct connection with, or relationship to the employees of the employer of which complaint is made, and such organization must be capable of acting as a bargaining representative of such employees if it should be so selected. Any other interpretation of the Act would admit inter-meddlers, resulting in a diversion of the Act's purposes to private ends and would intensify the evils which it sought to remedy.

■ Construing the statute as a whole to ascertain the intention and policy of the Congress in its enactment, it is clear that the Congress intended that only employees having a grievance because of unfair labor practices and labor organizations capable of acting as bargaining representatives could overcome the statutory inertia of the Board to take jurisdiction of controversies arising pursuant to the statute.

■ The object of the National Labor Relations Act was to obtain peace and security in the economic relationship between employer and employee so as to increase and not impede the flow of interstate commerce. The Act is not to be administered for the purpose of vengeance, but for the ends of justice, to give tranquility to industrial life. In its administration, we should take care not to uproot that which is the very foundation of the Act, and when trying an employer for its violation, we should be alert to avoid violating the rules which secure it. Violent proceedings bring on the bitterness of retaliation until all justice and moderation are trampled down and subverted.

The avowed purpose of the Act was to enable working men engaged in industry to strengthen their bargaining power through organization, which activity would induce the employer to enter into a collective agreement with the organization governing the relationship of the employer to the employees. This purpose would be thwarted, unless at least the formal consent of the employer is obtained. The purpose of the Act would not be subserved by allowing a labor organization guilty of criminal syndicalism to initiate proceedings before the Board. An employer would hardly be expected to willingly deal with a labor organization which had criminally destroyed his property.

■ One of the ultimate facts found by the Board was that the International Brotherhood of Electrical Workers was a labor organization as defined under Sec-

tion 2 of the Act.[2] This finding was jurisdictional.

 In our opinion the proffered evidence was material to establish whether or not the International Brotherhood of Electrical Workers, Local B-9 was a labor organization within the terms of 2(5) of the Act.

Samuel Guy, business manager of the Brotherhood, testified that during the last week in April 1937, an organization meeting which he was holding in Falcon's Hall in South Bend, Indiana, was spied upon by respondent's general line foreman, E. L. Livelsberger, and its assistant general line foreman, Glen Carlton. John R. Marks, assistant business manager, and Guy both testified that they talked with Thomas F. English, vice president and general manager of respondent, and Charles V. Calvert, assistant secretary, about organizing respondent's employees and that English stated that he had nothing to say about their union, but that he thought respondent's employees were well paid, satisfied and without need of a labor organization. The Trial Examiner accepted the statements of these witnesses as true and the ultimate facts based on their testimony were material to the Board's decision.

 At the time of the trial, the evidence adduced on the trial of the criminal cases in the Indiana State Court involving these witnesses, was not available to respondent or to the Board. The new evidence is of such character that its consideration by the Board would probably produce a different result.

The evidence on which the Board relies in its finding that respondent was guilty of unfair labor practices is that respondent dominated and interfered with the formation of the Michiana Electrical Utility Workers Association through its supervisory employees. The question of whether these employees were acting on their own behalf and that of their co-employees, or at the behest of respondent, is the crux of the case. The Board found that the American Federation of Labor had been active in attempting to organize respondent's employees since the fall of 1935, and the Congress of Industrial Organization

since the spring of 1937 and that neither had been successful.

The new evidence may throw some light on the issue of employer domination.

Pursuant to provisions of Section 10(e) of the Act this cause is remanded to the Board with directions to hear and consider such additional evidence as may be tendered by the parties relating to the destruction of respondent's property by the International Brotherhood of Electrical Workers, Local B-9, or its agents or representatives.

The Board is directed to make appropriate findings in the light of such evidence and to make such evidence a part of the transcript herein and the Board is also authorized to make such modification, if any, in its present order as the additional evidence may require.

The other issues presented by the parties to this appeal remain undecided.

---

[2] International Brotherhood of Electrical Workers is a labor organization chartered by the American Federation of Labor. It admits to membership electrical workers throughout the United States. Local B-9 of International Brotherhood of Electrical Workers admits to membership employees of the respondent and other electrical workers in Indiana and northern Illinois.