### LOCAL UNION NO. 28 INTERNATION- AL BROTHERHOOD OF ELEC- TRICAL WORKERS

v.

### INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS and Gordon M. Freeman as International President of International Brotherhood of Electrical Workers.

Civ. No. 13177.

United States District Court
D. Maryland.
Aug. 14, 1961.

Patrick A. O'Doherty and William A. Hegarty, Baltimore, Md., for plaintiff.

John Henry Lewin, Baltimore, Md., and Louis Sherman, Washington, D. C., for defendants.

THOMSEN, Chief Judge.

This is an action by a local union against its parent international and the international president, seeking (A) an injunction against an order of the international president revoking the charter of the local and directing certain corollary actions and (B) a declaratory judgment deciding various questions which have arisen between the parties with respect to the construction of the constitution of the international.

Defendants have moved (1) to dismiss the complaint for lack of jurisdiction over the subject matter and because the complaint fails to state a claim against defendants upon which relief can be granted, and (2) to vacate and dissolve a temporary restraining order issued by Judge Chesnut on August 4, 1961. Defendants contend: (A) that this court has no jurisdiction over the subject matter under sec. 301(a) of the Labor Management Relations Act of 1947, 29 U.S. C.A. § 185(a), upon which plaintiff now solely relies[1]; and (B) that this court should refuse to intervene until plaintiff has exhausted the appeals from the action of the president provided by the union constitution.

*Facts*

The following facts appear from the allegations of the complaint, affidavits filed by the respective parties, and statements of counsel conceded to be true at the hearing.

For a number of years the relations between the local and the international have been strained. See Executive Board, Local Union 28, I.B.E.W., et al. v. International Brotherhood of Electrical Workers, et al., D.Md., 184 F. Supp. 649, Watkins, J. After the filing of Judge Watkins' opinion and other hearings in that case, the trusteeship of the local union was terminated.

For many years it has been the policy of the I.B.E.W. to discourage strikes and to have its locals include in all collective bargaining agreements with local chapters of the National Electrical Contractors Association (N.E.C.A.) a provision calling for the arbitration of all disputes by the Council of Industrial Relations for the Electrical Contracting Industry of the United States and Canada (Council), a bipartite group composed of representatives of I.B.E.W. and representatives of N.E.C.A. See opinion filed May 16, 1961, in Local Union No. 28, I.B.E.W. v. Maryland Chapter, N.E.C.A., D.Md., 194 F.Supp. 494. In that case I held that the latest agreement between the local union and the Maryland Chapter did not require that the question whether the local union had the right to terminate the agreement be submitted to the Council for its decision, that the local union had the right to terminate the agreement on March 31, 1961, and that it did so terminate it upon proper notice.

At the conclusion of the hearing on May 11, at which that decision was announced, I suggested that the parties agree (1) that they would continue their collective bargaining in good faith, as required by law; (2) that the chapter take any appeal promptly, so that the

[1.] Plaintiff has in effect abandoned its reliance upon Title I of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 401 et seq., for jurisdiction in this case. In any event that Title deals with the rights of individual members and not with the rights of local unions as such.

case might be heard by the Court of Appeals at its June Term; and (3) that all members of the local union return to work and continue at work during collective bargaining until the decision of the Court of Appeals on any such appeal, or until July 31, if no appeal were taken. Both sides agreed to continue collective bargaining in good faith, the chapter agreed to take any appeal promptly, and all members of the union present in the courtroom agreed to return to work. The chapter appealed, but dismissed the appeal on June 9.

On June 13 the members of the local union voted to strike beginning June 19, and did so strike without obtaining the approval of the international president. Indeed, on June 15, 1961, the president sent a telegram to the officers of the local union which stated, inter alia: "I am therefore refusing to grant consent to a strike or other work stoppage by Local Union No. 28 of the I.B.E.W. I also wish to make it clear that no strike or other work stoppage at any future date can be undertaken without strict compliance with the provisions of Article 17 Section 13 of the Constitution of the International Brotherhood of Electrical Workers." That section and other provisions of the constitution of the I.B.E.W. relevant to this case are set out below in Note 2. Plaintiff contends that Art.

2. "Article IV:

\* \* \* \* \* \* \* \*

"Sec. 3. The I.P. is empowered as follows:

\* \* \* \* \* \* \* \*

"(2) To decide all questions of law, disputes or questions in controversy however arising, all his decisions being subject to appeal, first to the I.E.C. and then the I.C. (Notice in writing of appeal from any decision of the I.P. must be filed with the I.S. and I.P. within 30 days from date of such decision.)

\* \* \* \* \* \* \* \*

"(8) Either to suspend or revoke the charter of any L.U., or have the I.S. reject the per capita tax from any L.U. that fails or refuses to observe the laws and rules of the I.B.E.W.

\* \* \* \* \* \* \* \*

"(11) To appoint, if he so decides, a referee who may or may not be a member, to take testimony and report to him.

\* \* \* \* \* \* \* \*

"Article IX:

\* \* \* \* \* \* \* \*

"Sec. 4. The I.E.C. shall have the power to try any L.U. or member charged with injuring the interests of the I.B.E.W. by actions in violation of the I.B.E.W. laws or the obligation of the member, and may revoke or suspend charter or membership. (Nothing in this Constitution shall be construed to conflict with this power of the I.E.C.)

\* \* \* \* \* \* \* \*

"Sec. 6. Either to suspend or revoke the charter of any L.U.—or have the I.S. reject the per capita tax from any L.U.—that fails or refuses to observe the laws and rules of the I.B.E.W. or decisions rendered by proper International authority.

\* \* \* \* \* \* \* \*

"Article XVII:

"Sec. 1. No. L.U. shall start action in a court of law against the I.B.E.W., or against the decision of any International Officer of the I.E.C., until it has first exhausted all its remedies through all the courts of the I.B.E.W. \* \* \*

\* \* \* \* \* \* \* \*

"Sec. 7. L.U.'s are empowered to make their own bylaws and working rules, but these shall in no way conflict with this Constitution. Where any doubt appears, this Constitution shall be supreme. All bylaws, amendments and rules, all agreements, jurisdiction, etc., of any kind or nature, shall be submitted in duplicate form to the I.P. for approval. \* \* \*

\* \* \* \* \* \* \* \*

"Sec. 13. No L.U. shall cause or allow a stoppage of work in any controversy of a general nature before obtaining consent of the I.P. The I.P., or his representative, has the power at any time to enter any situation or controversy involving a L.U. or any of its members, and the decision of the I.P., direct or through his representative, shall be accepted by the L.U. and its officers, subject to appeal to the I.E.C. and I.C.

\* \* \* \* \* \* \* \*

"Sec. 24. L.U.'s—or Railroad System or Regional Councils—whose charters have been revoked or suspended for violation of this Constitution, or for non-compliance with decisions rendered by proper International authority, shall have no right or power to take any action, except actions necessary to comply with the Constitution or decisions rendered by proper International authority. After such action has been taken, no further action can be taken until notice from the

XVII, sec. 13, applies only to certain kinds of disputes under existing collective bargaining agreements, and not to "economic" strikes when no contract is in existence. The international president has rejected that contention.

At a meeting of the local union held on June 22, 1961, the telegram of the international president was read by its counsel, who asked for a vote of non-concurrence, which was given. After some further communications between the parties, the international president sent to the local union on July 7, a notice of a hearing before a referee to show cause why the charter of the local union should not be revoked or suspended.[3] The referee held a public hearing in Baltimore on July 17, 18, 19 and 21; counsel for the local union participated, testimony was taken, and the referee promptly reported his findings of fact to the international president, who conducted a further hearing on July 28, at which attorneys for the I.B.E.W. and attorneys for Local Union 28 appeared and argued.

Meanwhile, on July 17, the local union had filed its complaint in the instant case, alleging many of the facts set out above, alleging that the Maryland chapter of N.E.C.A. had not bargained in good faith, and contending that the local union is the collective bargaining representative of its members "and that under the Act it has the right to use its economic weapon and that no other party has the right to break the strike". The complaint further alleged that because of plaintiff's affiliation with the I.B.E.W. it enjoys a working arrangement with various other locals throughout the country and that three or four hundred of its members who were working through other local unions would have their employment terminated if plaintiff's charter were revoked. The complaint alleged that the course of action dictated by the international president "demonstrates conscious or unconscious failure to abide by his obligation to the Local, and further that his conscious or unconscious intent is to insist that the Local follow a course of action that would cause it to surrender its autonomy guaranteed to it by the Constitution of the I.B.E.W. and the Laws of the Land".

The complaint prays that the court declare that Art. XVII, sec. 13 of the constitution does not apply to an economic strike but only to disputes of a general nature which might arise under an existing collective bargaining agreement, that the plaintiff local union has not violated Art. XVII, sec. 13, that the international president is without authority "to hold a Show-Cause Hearing whereby the Local is required to prove that it did not violate the Constitution", that the international president has no power to try a local union but that it may only be tried by the international executive council, that the referee was without authority under the constitution of the I.B.E.W. to either try the local union or to make findings of fact, and that the hearing before the referee be declared null and void because of lack of due process, as well as a lack of constitutional authority.

I.P. is received that revocation or suspension has been terminated.

"Article XXVII:

* * * * * * * *

"Sec. 16. No appeals from decisions of the I.V.P. or from the I.P., or from the I.E.C., shall be recognized unless the party or parties appealing have complied with the decision from which they have appealed. * * *"

3. That notice referred to Art. IV, sec. 3(8), and Art. XVII, sec. 13 of the constitution (see Note 2, supra), recited many of the facts set out above, and required the local union to appear at a hearing before a referee in Baltimore, and show cause "why its charter should not be revoked or suspended or why such other appropriate action should not be taken under the constitution of the I.B.E.W. by the international president to insure observance of the laws and rules of the I.B. E.W." The referee was appointed by the international president pursuant to Art. IV, sec. 3(11) of the constitution. See Note 2. The referee was directed to take testimony and report his findings to the international president.

The complaint seeks an injunction restraining defendants from taking any action against the local by reason of the hearing of July 17 and enjoining them from taking any action whatever to jeopardize the employment of the hundreds of members now working through out-of-town locals.

Counsel for the parties appeared before Judge Watkins on July 17 and counsel for the plaintiff orally requested a temporary restraining order. No record or memorandum of that conference was filed, no order was issued by Judge Watkins, and no formal application for a temporary restraining order was filed by plaintiff until August 4.

On August 1, the international president sent to Local Union 28 and each member thereof his decision and order revoking the charter of Local Union 28. The essential portions of that order are set out in Note 4 below. The order directed that it should become effective on

---

4. "Decision and Order of International President signed and dated August 1, 1961.

\* \* \* \* \* \* \* \*

"It is my conclusion and decision that Local Union No. 28 of the I.B.E.W. failed or refused to observe the laws and rules of the I.B.E.W. by causing or allowing a work stoppage in a controversy of general nature without asking or receiving the consent of the I.P.—all of which was, and is, in direct violation of the Constitution of the I.B.E.W.

"It is also my conclusion that the violation of the Constitution was deliberate, knowing and wilful. This presents a case of direct challenge to the authority of the Constitution of the I.B.E.W.

"Therefore, in my capacity as International President, and pursuant to the authority vested in me by the Constitution, and in particular Article IV, Section 3(8) thereof, I order as follows:

"1) The charter of Local Union No. 28 of the I.B.E.W. is revoked.

"2) The jurisdiction enjoyed by Local Union No. 28 is transferred to a new local union which will have its headquarters in Baltimore.

"3) Appropriate legal proceedings shall be instituted by the International Union promptly upon the effective date of this Order for the following purposes:

"(a) To collect and to place in cash form all real and personal assets of Local Union No. 28, which belong to the members of the said Local, including land, buildings, mortgage investments, bonds and other securities and property; to pay the just debts of the Local which have accrued prior to the revocation of charter; to divide the remainder of such assets and to pay over to each member his appropriate share thereof; and

"(b) To determine which funds of Local Union No. 28 are trust funds; to secure from the Court the appointment of a Trustee or other appropriate officer to administer said funds in accordance with their trust purposes; or to make such transfers of said funds impressed with the original trust purpose to the new local union referred to above as may be authorized and directed by the Court, and for such other purposes as will best effectuate this Order.

"4) The I.S. is hereby directed to refuse to accept per capita tax from Local Union No. 28 from and after the effective date of this Order.

"5) Local Union No. 28 is directed to take no action from and after the effective date of this Order under the name of the International Brotherhood of Electrical Workers or under any other name except actions necessary to comply with the Constitution and decisions rendered by proper International authority in accordance with the provisions of Article XVII, Section 24 of the Constitution which provide: (Set out in Note 1, supra).

"The above order (paragraphs 1-5) shall become effective 8 A.M. Monday, August 7, 1961 UNLESS prior thereto Local Union No. 28 takes the following actions at its regular meeting of Friday, August 4, 1961 or at any meeting held prior thereto:

"1) (Oath of Obligation)

"2) The Local shall vote to terminate the work stoppage which commenced June 19, 1961 and to return to work Monday, August 7, 1961.

"3) The Local shall vote to authorize and direct the Members of the Labor Committee of the Local to refer all collective bargaining issues currently in dispute with the Baltimore Division of the Maryland Chapter of the National Electrical Contractors Association for final and binding decision by the Council on Industrial Relations; it being understood that the Local shall not be required to accept the Council Clause ruled terminable by Chief Judge Thomsen of the United States District Court for Maryland in Civil No. 12926 and No. 13002 decided May 16, 1961.

"4) (Notice of Action)."

August 7, unless prior thereto Local Union 28 took certain action, set out in the order, on or before Friday, August 4. The letter to the members of the local union described the effect of the order, the choice before the local union and the choice before each member.[5]

The local union took an appeal from the order of the president to the international executive council as permitted by Art. IV, sec. 3(2), of the constitution of the I.B.E.W., and that appeal is now pending. A prompt hearing before the international executive council has been promised by defendants, and the international president has agreed to hear the application for a stay of his order which was filed by plaintiff on August 4 and amplified on August 7. The international executive council will meet on September 11, 1961. The international convention will not meet until September, 1962.

On August 4, the local union filed herein a motion for a temporary restraining order enjoining defendants from (a) revoking the charter, (b) granting the jurisdiction of Local No. 28 to a new union, (c) instigating or filing legal proceedings as set out in the president's order, (d) compelling the members of the local union to make an election between having their charter revoked or instructing their officers to submit to a binding decision by the Council of Industrial Relations, pending hearing and determination of plaintiff's motion for an injunction, on the ground that immediate and irreparable injury, loss and damage would result to plaintiff. The motion was supported by an affidavit, setting forth some of the facts stated above and presenting the local union's construction of the documents.

On the same day, Friday, August 4, defendants moved to dismiss the complaint, and counsel for the parties appeared before Judge Chesnut, who signed a temporary restraining order, as requested, providing that the order should expire within ten days after entry unless extended, and granting leave to defendants to move to dissolve the order upon one day's notice. Such notice was given on Monday, August 7, and a hearing was held before me on Tuesday, August 8.

At that hearing it was agreed that, for the purposes of defendants' motion to dismiss the complaint and of defendants' motion to vacate and dissolve the temporary restraining order, the allegations of the motion for a temporary restraining order and the affidavit attached thereto might be considered as part of the complaint.

### Discussion

#### (A)

##### Jurisdiction

Sec. 301(a) of the Labor Management Relations Act (1947), 29 U.S.C.A. § 185 (a) provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States

---

5. In stating the choice before each member, the letter stated: "If the L.U. decides not to take the 3 steps listed above, the Order will go into full force and effect. In addition, the I.P. will, pursuant to the powers vested in him by Article IV, Sec. 3(7), prefer charges through the I.E.C. against each member who fails to return to work by 8 A.M., August 7, 1961. All members who are working out of town, or who are working for Baltimore contractors under a so-called interim agreement which does not have the approval of the I.P. are considered in violation of the Constitution if they were employed by a Baltimore contractor during the week of June 12–16, 1961, and have not returned to work with such employer by 8 A.M., August 7, 1961 or have failed to make a bona fide offer to do so prior to that hour and date." The letter concluded by quoting the following by-law of the local union: "The Constitution of the International Brotherhood of Electrical Workers is hereby made a part of these bylaws. Where there is any doubt about any section or part of these bylaws or where such might appear to be in conflict with the I.B.E.W. Constitution—then the I.B.E.W. Constitution shall control and be the law which must be followed."

having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

The courts have not agreed as to the extent of the jurisdiction granted to the district courts by that section, but some questions are now settled, e. g. a local union is a "labor organization" within the terms of the Act. 29 U.S.C.A. §§ 152(5), 142(3); Local Union No. 28, I. B.E.W. v. Maryland Chapter, N.E.C.A., 194 F.Supp. 494; N.L.R.B. v. Blanton Co., 8 Cir., 121 F.2d 564; N.L.R.B. v. Indiana and Michigan Electric Co., 6 Cir., 124 F.2d 50, affirmed 318 U.S. 9, 63 S.Ct. 394, 87 L.Ed. 579. It also seems to be settled that the constitution of an international union is a "contract" between the international and its members and locals. International Ass'n of Machinists v. Gonzales, 356 U.S. 617, at page 618, 78 S.Ct. 923, 2 L.Ed.2d 1018; Local 1104 United Electrical Radio & Machine Workers of America v. Wagner Electric Corp., E.D.Mo., 109 F.Supp. 675; Note, 69 Yale L.J. 299, 302, especially cases cited in f. n. 24. A majority of the courts are now agreed that the term "contracts" in sec. 301(a) should not be limited to collective bargaining agreements. Local 33, Hod Carriers v. Mason Tenders, 2 Cir., 291 F.2d 496; United Textile Workers of America A.F.L.-C.I.O. v. Textile Workers Union, 7 Cir., 258 F.2d 743; Copra v. Suro, 1 Cir., 236 F.2d 107, 113; Snoots v. Vejlupek, N.D.Ohio, 87 F.Supp. 503. See also discussion of this point by Judge Cashin in Burlesque Artists Ass'n v. American Guild of Variety Artists, S.D.N.Y., 187 F.Supp. 393, and in the Note in 69 Yale L.J., supra. Cf. Sun Shipbuilding & Dry-Dock Co. v. Industrial Union, E.D.Pa., 95 F.Supp. 50. But the courts are not agreed on what other types of contracts were intended to be covered by sec. 301(a). See discussion in the majority and concurring opinions in Local 33, Hod Carriers, supra. No case brought by a local union against its parent international alone for an alleged violation of a constitution has arisen under sec. 301(a); few cases have discussed intra-union disputes, where two or more locals of the same international were in conflict. See Burlesque Artists Ass'n, supra, and the two opinions in Local 33, Hod Carriers, supra. In the latter case the majority held that a district court should assume jurisdiction under sec. 301(a) unless there is a conflict or likelihood of conflict with the jurisdiction of the N.L.R. B.

The N.L.R.B. would have no jurisdiction over the present dispute between the parties in the case at bar, although it would have jurisdiction to redress possible future discrimination against individual members. 29 U.S.C.A. §§ 158(b) (1) and (b) (2); Int'l Ass'n of Machinists v. Gonzales, supra; Robertson v. Banana Handlers Int'l Longshoremen's Ass'n, E.D.Pa., 183 F. Supp. 423.

If sec. 301(a) be taken literally, this is a suit for an alleged violation of a contract between two labor organizations representing employees in an industry affecting commerce. Although the question is not free from doubt, I conclude that the fact that one of the organizations is a local union and the other is its parent international does not of itself take the case outside the scope of the jurisdiction granted by sec. 301 (a). A federal court should not assume jurisdiction where such assumption would impinge upon the province of the N.L.R.B. or where the controversy is not ripe because the plaintiff has not exhausted reasonable intra-union remedies. In the absence of conflict with the primary jurisdiction of the N.L.R.B., a state court would have jurisdiction over the controversy, although it would ordinarily stay its hand pending exhaustion of reasonable intra-union remedies. The Lincoln Mills case, Lincoln Mills of Alabama v. Textile Workers Union, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, and other recent cases have indicated that the federal courts should take a broad view of the jurisdiction granted by sec. 301(a) and should fashion a body of federal

law from the policy of our national labor laws.[6]

## (B)

### Exhaustion of Remedies

█ The rule that courts will not intervene in intra-union disputes until appeals within the union have been exhausted is based upon sound policies: that union appellate tribunals may take corrective action, reducing the burden on the courts; that the courts may have the benefit of the expert judgment of those tribunals; and that unions should be given full autonomy and responsibility. Summers, Union Discipline, 70 Yale L. J. 175, at 207; Cohn & Lubell, Control of a Labor Union, 22 Ohio State L.J. 163. The rule is subject to exceptions, where the remedy provided would be futile or a sham or unreasonable because of probable delays. Summers, p. 207, et seq.; Cohn & Lubell, p. 186. An exception has also been recognized where the original action taken against the local violates due process. Fanara v. International Brotherhood of 'Teamsters, 205 Misc. 538, 128 N.Y.S.2d 449; Summers, p. 209; Cohn & Lubell, p. 186.

█ In the instant case no facts have been alleged or shown sufficient to warrant a finding that the appeal to the international executive council provided by the constitution of the union,[7] would be futile, delayed, or otherwise unreasonable. Nor is there any reason to believe that a further appeal to the international convention would be futile or a sham, but there is a serious question of delay involved in that appeal. The local union has already taken an appeal to the international executive council from the action of the president, and that appeal is now pending, to be heard probably next month.

█ Art. XXVII, sec. 16 of the constitution [8], which provides that a local union may not maintain its appeal unless it complies with the decision appealed from, does not prevent the remedy from being adequate in this case. The order of the president does not call for any action by the local union; it merely prohibits the local union from "flying the flag" of the international after the charter of the local has been revoked for its refusal to comply with the directives of the president, as required by the union. We are dealing in this case with the rights of the local union itself, as a labor organization, not with the rights of the individual members, none of whom are parties to this case. Individual members have rights under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 401 et seq., which will be protected by the courts, and have rights under the Labor-Management Relations Act of 1947, which will be protected by the N.L.R.B. Robertson v. Banana Handlers Int'l Longshoremen's Ass'n, E.D. La., 183 F.Supp. 423. Those rights are not before this court in the case at bar, and cannot justify the proposed injunction or any other relief requested in this case. I intimate no other opinion with respect to any such rights or claims.

█ Plaintiff claims that it has been denied due process in the proceedings thus far, but that charge is not substantiated; indeed it is answered by the admitted facts. Plaintiff contends that the international president undertook to "try" the local union, and that he had no authority to do so; that only the international executive council has the authority to "try" a local union. But plaintiff admits that it called a strike without the approval and against the express direction of the international president. The president did not undertake to revoke the charter of the local union under the powers granted him by Art. IV, sec. 3(2) and sec. 3(8),[9] without any hearing. He appointed a referee, who conducted a public hearing in Baltimore, at which plain-

6. See Lincoln Mills, supra, 353 U.S. at page 456, 77 S.Ct. 912.

7. Art. IV, sec. 3(2), set out in Note 2, above.

8. See Note 2, above.

9. See Note 2, above.

tiff was represented by counsel and afforded an opportunity to present witnesses and to rebut the charges against it. The construction of the constitution was not considered by the referee, who held that it was beyond the scope of his authority. The referee reported his findings to the international president, who granted the local union and its counsel an opportunity to present its arguments to him personally. No lack of procedural due process by the referee or the president is shown by any fact alleged or presented to this court. Cf. Underwood v. Maloney, E.D.Pa., 152 F.Supp. 648, affirmed in part, vacated in part, 3 Cir., 256 F.2d 334, certiorari denied 358 U. S. 864, 79 S.Ct. 93, 3 L.Ed.2d 97. See Gallagher v. Monaghan, Sup., 58 N. Y.S.2d 618. The construction of Art. XVII, sec. 13 of the constitution of the union and the propriety of the action of the president can be and presumably will be decided by the appropriate union tribunal. No such arbitrary or unreasonable action as would warrant the intervention of a court by injunction *at this time* has been alleged or shown.

At the hearing on the pending motions counsel for the local union argued that there had been collusion between the international president and the officers of N.E.C.A. in an effort to force the local union to submit all questions in dispute to the bipartite Council on Industrial Relations. No doubt the president is committed to the proposition that all disputes should be settled by the decision of the Council rather than by strikes; that has been the policy of both I.B.E. W. and N.E.C.A. for many years. But nothing has been alleged or shown to justify the innuendo. The president made it clear that the local union would not be required to accept the "evergreen clause" which this court had ruled invalid. See 194 F.Supp. 494.

Plaintiff and its members have the legal right to conduct an economic strike, but there is some force in the position taken by defendants that if such a strike is called without the authority of the international president and in violation of the constitution of the I.B.E.W., the president may revoke the charter of the local union, and it may not act as a local of the I.B.E.W. unless and until the action of the president is reversed on appeal.

### Conclusion

The temporary restraining order granted by Judge Chesnut expires today. No sufficient grounds have been shown for the issuance of a preliminary injunction, as prayed in the complaint. Indeed, no grounds for any relief *at this time* are alleged. The motion to dismiss the complaint will be granted, without prejudice to the right of the plaintiff and of its individual members to seek appropriate relief in this or any other court as future events may warrant.